STATE OF CONNECTICUT *v.* JOHN TRUJILLO
(4059)

DUPONT, C. J., HULL and DALY, Js.

Argued May 12, 1987—decision released September 15, 1987

*Richard Emanuel,* for the appellant (defendant).

*James G. Clark,* assistant state's attorney, with whom, on the brief, was *John Whalen,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. After a trial to a jury, the defendant was convicted of the crimes of assault in the second degree, in violation of General Statutes § 53a-60,[1] and risk of injury to a minor, in violation of General Statutes § 53-21.[2] The dispositive issues of this appeal are whether the trial court erred (1) by impermissibly enlarging the risk of injury offense in its charge to the jury, (2) in its charge to the jury on circumstantial evidence, (3) by imposing sentences on both the assault and risk of injury charges in violation of the double jeopardy prohibition of multiple punishments for the same offense, and (4) in denying his motions for judgment of acquittal.

The jury could reasonably have found the following facts. At the time of the incident, the defendant had resided with a woman and her four children for approximately six years. Although he was the natural father

---

[1] General Statutes § 53a-60 provides in pertinent part: "A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

of only two of the children, he acted as a father for all four children during this period. The victim is the woman's son, and was eleven years old at the time of the incident. The victim testified that he considered the defendant to be his stepfather.

On August 28, 1984, the victim suffered a burn on his chest which was caused by a hot clothes iron. In a bill of particulars, the state alleged that the defendant had intentionally burned the victim with an iron, and that as a result of this act, the victim "sustained a severe burn to his chest, great pain, and a permanent scar," and that the defendant's act was such that the victim was "likely to have his health injured or impaired."

The victim testified at trial that on the day of the incident he had taken his sister for a ride on a minibike, and that she had burned her leg on the muffler after falling off the bike. When the defendant found out about the accident, he told the victim to go to his room. The defendant subsequently went into the victim's room to reprimand him for taking his sister out on the minibike. In doing so, the defendant picked up an iron which was normally kept in the room to demonstrate that the heat of a muffler was similar to the heat of an iron. The victim testified that the iron was plugged in, but that the switch on the iron was in the "off" position. He further testified that at that point he tried to get away from the defendant by pushing his way past him. He claimed that, in doing so, he hit his chest against the iron. The victim maintained throughout the trial that the incident had been an accident.

The state was thereafter permitted to cross-examine the victim concerning the detailed and signed statement he had previously given to the police regarding the incident. The statement was introduced into evidence without objection from the defendant. In that statement,

the victim stated that after the defendant had found out about the minibike accident, he threatened to heat up the iron and "get" the victim. The victim also stated that the defendant thereafter plugged the iron into the outlet in the victim's bedroom, and after waiting a few minutes, checked to see if it was hot while saying: "Just wait until it gets hot and then I'm going to burn you." The statement further provided that the defendant backed the victim into a corner and put the iron against his chest.

The victim testified at trial that the facts contained in the statement were not true, and further insisted that his in-court testimony was the truth. He further stated that the reason he had provided false statements to the police was because he was "scared and did not know what to say." He testified that the detective had threatened that he "might have to go to juvenile court." The victim also stated that he thought the police would not believe him if he said the incident was an accident, and therefore thought he had to fabricate a story.

The defendant testified that although he did hold up the iron in front of the victim, he did not know that the iron was hot. He stated that the iron had been defective, and would consequently heat up even if it was switched off. He maintained that he picked up the iron only while explaining to the victim that the heat of a muffler was similar to that of an iron, and that the victim had accidently walked into the iron.

I

The defendant claims that the trial court erred in its charge to the jury on the offense of risk of injury to a minor in violation of § 53-21. That section proscribes " 'two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's

moral or physical welfare; see *State* v. *Smith,* 149 Conn. 487, 181 A.2d 446 [1962]; and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being.' " *State* v. *Sullivan,* 11 Conn. App. 80, 98, 525 A.2d 1353 (1987), quoting *State* v. *Newton,* 8 Conn. App. 528, 532–33, 513 A.2d 1261 (1986); see also *State* v. *Apostle,* 8 Conn. App. 216, 242, 512 A.2d 947 (1986).

The defendant was initially charged by a short-form information which failed to specify the alternative with which he was charged. In a motion for a bill of particulars, the defendant requested that the state provide the following information regarding the risk of injury charge: (1) the specific act or acts allegedly committed by the defendant upon which the state relied in charging the defendant; (2) the date, time and place said act or acts were allegedly committed and the specific nature of each act; and (3) the exact and precise manner in which it was alleged that the defendant committed any act or acts in violation of § 53-21.

The state filed a bill of particulars pursuant to the request of the defendant.[3] It provided in pertinent part: "1. It is alleged that defendant burned [the victim], age 11, on the chest with a hot clothes iron. . . . 3. It is alleged that the defendant's conduct, as set forth above, was such that the victim, age 11, was likely to have his health injured or impaired." The bill of particulars, therefore, specified that the defendant was charged with only the second category of conduct prohibited by

[3] We note that the state did not comply with the provisions of Practice Book § 833 which provides: "When any bill of particulars is ordered, an amended or substitute information shall be filed incorporating its provisions." The defendant, however, has failed to object to the state's noncompliance with § 833. Under the circumstances of this case, therefore, the failure of the state to file either an amended or substitute information "does not change our view of the disposition of this case." *State* v. *Roque,* 190 Conn. 143, 155 n.6, 460 A.2d 26 (1983).

§ 53-21. Under this second category of prohibited conduct, " 'the state must prove (1) an act (2) likely to impair the morals or health (3) of a child under the age of sixteen.' " *State* v. *Sullivan,* supra, 99, quoting *State* v. *McCall,* 187 Conn. 73, 91, 444 A.2d 896 (1982).

The trial court's charge to the jury, however, included references to *both* alternatives. The trial court instructed the jury that a conviction under the risk of injury statute would require the jury to find conduct which fell into either of two categories: "First; willfully or unlawfully causing or permitting such child to be placed in a situation where it's life or limb is in danger or it's health likely to be injured. Second; the doing of any act likely to impair the health of a child. These are not separate elements. These are two divisions of the statute. *And you can find under either one of them."* (Emphasis added.) The trial court, therefore, not only instructed the jurors on an inapplicable portion of the statute, but also specifically instructed them that a conviction could be based on *either* portion of the statute.

The defendant alleges that the trial court's instruction unconstitutionally enlarged the offense of risk of injury as stated in the charging documents, and effectively permitted the jury to convict him on the basis of an uncharged portion of the statute in violation of his rights under the sixth amendment to the United States constitution and under article first, § 8 of the Connecticut constitution.[4]

The defendant failed to raise this claim at trial and failed to take an exception to the trial court's charge. See Practice Book § 852. We review this claim, however, under the doctrine of *State* v. *Evans,* 165 Conn.

---

[4] The sixth amendment to the United States constitution and article first, § 8 of the Connecticut constitution provide that "[i]n all criminal prosecutions, the accused shall have a right . . . to be informed of the nature and cause of the accusation . . . ."

61, 70, 327 A.2d 576 (1973), because the defendant's claim of enlargement implicating the fundamental constitutional right to be informed of the nature and cause of the accusation against him is adequately supported by the record, and because we have recently granted an *Evans* review for a similar claim in *State* v. *Newton,* supra, 532; see also *State* v. *Roque,* 190 Conn. 143, 149–50, 460 A.2d 26 (1983).

The provisions of both the sixth amendment to the United States constitution and article first, § 8 of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature of the charge against him " ' "with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise . . . ." ' " *State* v. *Scognamiglio,* 202 Conn. 18, 22, 519 A.2d 607 (1987), quoting *State* v. *Franko,* 199 Conn. 481, 490, 508 A.2d 22 (1986). In order " 'for the defendant to establish an infringement of these constitutional rights, he must demonstrate that the court's charge caused him unfair surprise or prejudiced the preparation of his defense.' " *State* v. *Scognamiglio,* supra, 22.

The defendant does not claim, nor do we find, that he was unfairly surprised by the trial court's instruction. The introduction of evidence relating to the uncharged portion of the statute by the state without objection from the defendant, coupled with his failure to object to the disputed instruction, negates any possible claim of unfair surprise in the present case. *State* v. *Franko,* supra, 490–91; *State* v. *Roque,* supra, 155–56; *State* v. *Newton,* supra, 536–37. The thrust of the defendant's claim of error, however, is that he was prejudiced in the preparation of his defense by such an instruction.

In determining whether a defendant has been prejudiced in the preparation of his defense, we consider the nature of his defense advanced at trial in relation

to the trial court's instruction. See *State* v. *Newton,* supra. Where the record indicates that a defendant would not have changed his defense in any way had he actually been charged by the state with the particular theory of criminal liability upon which a trial court instructed the jury, the defendant's defense cannot be said to have been prejudiced. *State* v. *Scognamiglio,* supra, 22–23; *State* v. *Franko,* supra, 491. Thus, if the defendant's defense encompasses the uncharged theory of criminal liability as well as the charged theory, and, if believed by the jury, could lead to an acquittal under either theory, his constitutional rights have not been adversely implicated by the trial court's instruction. *State* v. *Franko,* supra.

In the present case, the defendant had been apprised by the bill of particulars that the state would prosecute him only under the second alternative provided in the risk of injury statute. The purpose of the bill of particulars " ' "is to supply both the accused and the court *additional* information concerning an accusation that the defendant has committed an act or acts constituting a criminal offense." ' " (Emphasis in original.) *State* v. *Eason,* 192 Conn. 37, 40–41, 470 A.2d 688 (1984), quoting *State* v. *Coleman,* 167 Conn. 260, 269, 355 A.2d 11 (1974). As such, a bill of particulars limits the state to proof of the commission of an offense in substantially the manner described. *State* v. *Roque,* supra, 155. In the present case, therefore, the bill of particulars limited the state to proving that the defendant had burned the victim on the chest with the iron, and that such conduct was likely to injure or impair the victim's health. See *State* v. *Shaw,* 186 Conn. 45, 51, 438 A.2d 872 (1982). The defendant was justified in relying upon the state's particularization of the charge and in preparing a defense to the allegations contained in the bill of particulars. Id.

The defendant's defense was predicated on the assertion that the victim had accidentally brushed against the

iron while attempting to walk around the defendant. As part of such defense, the defendant admitted that he had held the iron in front of the victim while it was plugged in, but denied the allegation that he committed the specific act of burning the victim with the iron. He, therefore, was proffering a defense directed to the specific act alleged in the bill of particulars. The evidence which the defendant might have offered had he been charged with the entire risk of injury statute, however, "would logically have differed from that which he did present to defend against the portion of the statute with which he was charged." *State* v. *Newton,* supra, 535.

A charge of risk of injury can encompass " 'a host of possibilities and a multitude of acts.' " Id., 536, quoting *State* v. *Apostle,* supra, 246. "In order to commit an offense under the first part of the broad risk of injury statute, no touching of any part of the body is required. '[T]he creation of a prohibited situation is sufficient.' " *State* v. *Newton,* supra, quoting *State* v. *Perruccio,* 192 Conn. 154, 160, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984). The defense asserted by the defendant, therefore, even if believed by the jury, would not have been effective in obtaining an acquittal under the first alternative provided in the statute. Cf. *State* v. *Scognamiglio,* supra, 23; *State* v. *Franko,* supra, 490–91. The evidence presented by the defendant as part of his defense disclosed numerous acts which could have persuaded the jury to consider the uncharged portion of the risk of injury statute. See *State* v. *Newton,* supra. The defendant's admission that he held the iron up in front of the victim while it was plugged in, for example, could have been construed to constitute a prohibited situation sufficient to sustain a conviction under the first alternative of the statute. We conclude, therefore, that the defendant has met his burden of proving that he was prejudiced in

the presentation of his defense by the trial court's charge to the jury. See id.

Moreover, we find that it was reasonably possible that the jury was misled by the erroneous charge into misunderstanding an issue of fundamental constitutional significance. See id., 534. The trial court did not inform the jury at any time that the state had limited its accusation to only one part of the risk of injury statute. Thus, the erroneous instruction, coupled with the evidence presented at trial, could reasonably have led the jury to convict the defendant "for a crime the elements of which were not alleged in the information." *State v. Belton,* 190 Conn. 496, 504, 461 A.2d 973 (1983); *State v. Newton,* supra, 537-38.[5] Because a new trial will be necessary on the risk of injury count, we will not address the defendant's other claim of error arising out of that charge.[6]

## II

The defendant also challenges the trial court's jury instructions on circumstantial evidence. The trial court instructed the jury that it could draw an inference if it was "more probable than not that the facts to be inferred are true." The defendant asserts that this instruction diluted the state's burden of proof beyond a reasonable doubt, thus denying him his constitutional

---

[5] Although the evidence presented in this case would have supported a verdict based solely upon the second alternative provided in the risk of injury statute, that is *not* the relevant inquiry before us. *State v. Newton,* 8 Conn. App. 528, 538 n. 5, 513 A.2d 1261 (1986). " '[W]hat is before us is whether it is reasonably possible that the jury were misled. See *State v. Rose,* 169 Conn. 683, 688-89, 363 A.2d 1077 (1975).' " Id., quoting *State v. Belton,* 190 Conn. 496, 504, 461 A.2d 973 (1983).

[6] The defendant claims that when the trial court instructed the jury that it could find the defendant guilty under either alternative of the statute, it failed to instruct the jurors that they must unanimously agree on the same alternative. Because we have determined that the trial court erred in impermissibly enlarging the offense by instructing the jury on both alternatives, we need not reach this issue.

right to a fair trial. Although the defendant neither filed a written request to charge nor excepted to the challenged portion of the charge, we will review this claim under *State* v. *Evans,* supra, pursuant to the precedent established by both this court and our Supreme Court in recent cases granting such an *Evans* review to numerous similar claims, because such a claim implicates the fundamental constitutional right that the state prove the defendant's guilt beyond a reasonable doubt. See *State* v. *Robinson,* 204 Conn. 207, 209–10, 527 A.2d 694 (1987); *State* v. *Miller,* 202 Conn. 463, 489–90, 522 A.2d 249 (1987); *State* v. *Butler,* 11 Conn. App. 673, 675–76, 529 A.2d 219 (1987); *State* v. *McKenna,* 11 Conn. App. 122, 134–35, 525 A.2d 1374 (1987).

These cases have recognized that a jury instruction in a criminal case which informs a panel that it may infer a fact when it is more probable than not that such a fact exists is erroneous "because, as applied to inferences for the finding of facts that are essential elements of the crime, it unconstitutionally dilutes the state's burden of proving guilt beyond a reasonable doubt."[7] *State* v. *McKenna,* supra, 135. Such error, however, has been held to be reversible only if it is reasonably possible that the jury was misled by the trial court's instructions. Id.

In determining whether the instruction is reasonably likely to have misled the jury, our courts have focused upon the primary disputed factual issue which was before the jury in the case, and the bearing that the erroneous instruction had on such issue. *State* v.

---

[7] The state argues in its brief that the trial court's instruction was a correct statement of the law of inferences, and that this court should not adhere to the precedent established by *State* v. *Whelan,* 200 Conn. 743, 758, 513 A.2d 86, cert. denied, 749 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), and *State* v. *Rodgers,* 198 Conn. 53, 59, 502 A.2d 360 (1985). As we recognized in *State* v. *Thurman,* 10 Conn. App. 302, 309 n.5, 523 A.2d 891 (1987), however, "this court will not reexamine or reevaluate Supreme Court precedent."

*McKenna,* supra, 136. In cases in which the principal factual issue is characteristically proven by circumstantial evidence, or when the state relies primarily upon circumstantial evidence to prove the disputed central issue of fact, we will "closely scrutinize" the court's instruction regarding the use of circumstantial evidence as proof of that essential element. *State* v. *Robinson,* supra, 210. If, on the other hand, the principal disputed factual issues are not proven primarily by circumstantial evidence, " 'the trial court's instructions may be read as a whole to determine whether it is reasonably possible that the jury was misled by an erroneous explanation regarding the use of circumstantial evidence.' " *State* v. *Whelan,* 200 Conn. 743, 757, 513 A.2d 86, cert. denied, 749 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), quoting *State* v. *Farrar,* 7 Conn. App. 149, 155–56, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986).

Our courts have consistently found reversible error in prior cases in which the principal disputed issue at trial was intent, because such issue " 'is characteristically proven by circumstantial evidence.' " *State* v. *Whelan,* supra, 757. In such cases, it is essential that the jury is provided with a correct instruction on the meaning and utilization of circumstantial evidence. When an erroneous instruction is given, "it cannot be said that the incorrect statement did not influence the jury." *State* v. *Rodgers,* 198 Conn. 53, 59, 502 A.2d 360 (1985). In the present case, the state concedes that the principal factual issue in the assault charge was intent, and that the trial court's erroneous instruction must be subjected to close scrutiny.

The state contends, however, that the meaning of "close scrutiny" has not yet been determined by this court or the Supreme Court. It argues that such close scrutiny analysis should *not* require this court to review the erroneous instruction in isolation from the rest of

the jury charge. Rather, the state submits that "close scrutiny" merely means that "the presumption of correctness normally afforded the actions of the trial court is abandoned in favor of a de novo review of the instructions *as a whole.*" The state claims, therefore, that even in cases in which the disputed factual issue is intent, the court must review the jury instructions as a whole in order to determine whether the jury has been misled. In support of this claim, the state argues that to read the instruction in isolation from the rest of the charge "defies common sense and logic."

The state's argument, however, is unpersuasive in light of our Supreme Court's recent decision in *State* v. *Robinson,* supra, 210. In that case, the court recognized that "[w]here the principal factual issue at trial is intent, which is typically proven by circumstantial evidence, 'we will closely scrutinize the court's instructions' on circumstantial evidence, *in isolation from the remainder of the charge,* to determine whether the court misled the jury as to the state's burden of proof." (Emphasis added.) This holding conclusively resolves any potential confusion claimed by the state regarding the manner in which close scrutiny analysis is applied. See also *State* v. *Rodgers,* supra, 58.

Adopting this analysis, we conclude that it was reasonably possible that the jury was misled with respect to the state's burden of proving intent beyond a reasonable doubt. The primary disputed issue in the assault charge was whether the defendant intended to cause physical injury to the victim. In order to prove this element, the state produced the testimony of a variety of witnesses to establish facts from which the jury could have inferred such intent.[8] "Having been told that an

---

[8] The circumstantial evidence presented by the state to prove the element of intent included testimony which established that the defendant's own daughter had been injured because of the victim, and that the defendant had wanted to punish the victim. Moreover, the mother of the victim

inference may be drawn when 'it is more probable than not that the fact[s] to be inferred [are] true,' the jury was, thus, permitted to draw the inference of intent, necessary to a finding of guilty, based on the erroneous probability standard." *State* v. *Whelan,* supra, 758.

Although our courts have previously found automatic reversible error in similar cases, this court has recently held that a harmless error analysis can be applied to this type of error pursuant to the holding in *Rose* v. *Clark,* 478 U.S. 570, 583–84, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986). *State* v. *Perez,* 10 Conn. App. 279, 290, 523 A.2d 508 (1987). Such an analysis requires that we determine whether, based upon the whole record, it is clear beyond a reasonable doubt that the constitutional error did not contribute to the jury's verdict. *State* v. *Perez,* supra, 290. The state has failed to point to any evidence on the issue of intent which is so "overwhelming" that we can conclude as a matter of law that the jury's verdict was not influenced by the erroneous instruction, nor do we find any such evidence contained in the record. See *State* v. *Dullivan,* 10 Conn. App. 474, 479, 523 A.2d 1353 (1987). The evidence which tended to prove that the defendant intended to burn the victim, while sufficient to sustain the guilty verdict, was not "overwhelming." See id. None of the state's witnesses either would or could testify with certainty that the defendant had acted with the requisite intent. Moreover, the victim's prior statement was vehemently denied by him as being a truthful or accurate version of the incident. We thus conclude that the erroneous instruction was harmful in this case. A new trial, therefore, must be ordered on the charge of assault in the second degree.

---

testified that at one point she was not convinced that the burning had been an accident. Various police officers testified that the victim appeared to be upset and afraid on the day after the incident, and that they were of the opinion that such incident had not been an accident.

## III

Although a new trial must be ordered, the defendant's claim that the trial court's imposition of sentences on both the assault charge and the risk of injury charge violates the prohibition against double jeopardy is considered since it is likely to recur on retrial.[9] See *Lamb* v. *Burns,* 202 Conn. 158, 166, 520 A.2d 190 (1987).

[9] In his brief, the defendant raises an additional claim of error which we will not review because it will not recur at retrial. In such claim, the defendant alleges that the trial court erred in failing to instruct the jury that the victim's prior inconsistent statement could only be used for impeachment purposes. In 1986, our Supreme Court decided *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 749 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), in which it adopted a rule which permits prior written inconsistent statements of a nonparty witness to be used, not only for impeachment purposes, but for substantive evidence as well when such statements were "signed by the declarant, who has personal knowledge of the facts stated, [and] when the declarant testifies at trial and is subject to cross-examination." Id., 753. At the time of the defendant's trial, however, our courts had adhered to the traditional view that a prior inconsistent statement of a nonparty witness was inadmissible hearsay if offered to prove the truth of the matters asserted therein, and, therefore, was admissible only for impeachment purposes. *State* v. *Villafane,* 171 Conn. 644, 672, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977). The defendant concedes that the victim's prior written inconsistent statement in this case could be admitted as substantive evidence if the holding in *State* v. *Whelan* were applied to this case. He argues, however, that such holding should not be retroactively applied to this case, and that the trial court erred by failing to instruct the jury pursuant to then existing caselaw.

We need not reach this argument, however, since we have already determined that a new trial is necessary. Because such retrial will obviously take place after *State* v. *Whelan,* supra, was decided, the question of the propriety of a retroactive application of *Whelan* will no longer exist.

We also reject as unpersuasive the defendant's claim that *Whelan* is not applicable to the present case merely because the trial court was not specifically apprised of the question of the admissibility of the prior inconsistent statement, as was the trial court in *Whelan.* The trial court's failure to address the specific issue of whether the prior inconsistent statement should have been admitted under the circumstances of this case resulted, in part, because of the defendant's failure to alert the trial court to such issue by either submitting a request to charge or specifically excepting to the charge as given.

The defendant alleges that his rights under the double jeopardy clause of the fifth amendment to the United States constitution and under Connecticut law were violated by the trial court's imposition of multiple punishments for the same offense.[10] As support for his claim, the defendant asserts that the state, in its bill of particulars, alleged the *same* act in its particularization of both the assault in the second degree charge and the risk of injury charge, and that the risk of injury charge was thus necessarily included within the assault charge.

The prohibition of double jeopardy prevents multiple punishments for the same offense in a single trial. *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *State* v. *Devino,* 195 Conn. 70, 73, 485 A.2d 1302 (1985). Double jeopardy analysis in this context is a two-step process. "First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." *State* v. *Devino,* supra, 74.

In the present case, both the defendant and the state agree that the assault charge and the risk of injury charge arose out of the same act. The state argues, however, that the charged crimes are *not* the same offense. We agree.

"The classic test for whether offenses are the same within the meaning of the double jeopardy clause 'where

---

[10] The fifth amendment to the United States Constitution provides that "[n]o person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb . . . ."

Although the Connecticut constitution contains no specific double jeopardy provision, " 'the due process guarantees of article first, § 8, have been held to include such a protection.' " *State* v. *Van Sant,* 198 Conn. 369, 375 n.5, 503 A.2d 557 (1986), quoting *State* v. *Rawls,* 198 Conn. 111, 113 n.3, 502 A.2d 374 (1985).

the same act or transaction constitutes a violation of two distinct statutory provisions . . . is whether each provision requires proof of a fact which the other does not.' " *State* v. *Devino,* supra, 74–75, quoting *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). This test is applied with reference to the bill of particulars or charging documents. *State* v. *Devino,* supra, 75. "It is only when 'the elements of one offense as defined by the statute include the elements of a lesser offense; or if one offense is merely nominally distinct from the other' that double jeopardy attaches." *State* v. *Perruccio,* 192 Conn. 154, 162, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984), quoting *State* v. *McCall,* 187 Conn. 73, 91, 444 A.2d 896 (1982).

Assault in the second degree and risk of injury do not stand in the relation of greater to lesser included offenses, as each require proof of elements not required by the other. In order to convict under the risk of injury statute, as charged in the bill of particulars, the state must prove (1) an act (2) likely to impair the moral or health (3) of a child under the age of sixteen. General Statutes § 53-21; *State* v. *McCall,* supra; *State* v. *Sullivan,* 11 Conn. App. 80, 99, 525 A.2d 1353 (1987). Conversely, a conviction of assault in the second degree, as charged in the bill of particulars, requires proof of (1) the specific intent to cause physical injury to another person (2) actual physical injury resulting to that person (3) by means of a dangerous instrument. General Statutes § 53a-60. Thus, although the statutory violations resulted from the same act or transaction and were described in identical terms by the state in its bill of particulars, the elements of the two charges are distinct and dissimilar. The statutory violations charged, therefore, are clearly not the same offense for double jeopardy purposes.

## IV

In his final claim of error, the defendant alleges that the evidence was insufficient to establish the defendant's guilt beyond a reasonable doubt, and that the trial court erred in denying his motions for a judgment of acquittal. It is necessary to review this claim even though we have concluded that there must be a new trial because, if the evidence were insufficient, the defendant would be entitled to an acquittal instead. *State* v. *McIntosh,* 12 Conn. App. 179, 187 n.3, 526 A.2d 11 (1987). The defendant claims that the evidence was "so inconsistent and contradictory that it necessarily encouraged the jury to engage in speculation and conjecture."

Our role in reviewing a sufficiency of the evidence claim is limited. When a verdict is challenged because of a claim of insufficient evidence, the issue is whether the jury " 'could have *reasonably* concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' " (Emphasis added.) *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985). In considering this issue, this court must construe that evidence "in the most favorable manner reasonably possible to support the jury verdict." *State* v. *Miller,* supra, 486; see also *State* v. *Leavitt,* 8 Conn. App. 517, 523, 513 A.2d 744, cert. denied, 201 Conn. 810, 516 A.2d 886 (1986). In our inquiry, we cannot substitute our judgment for that of the jury. *State* v. *Miller,* supra, 489. This court, therefore, should not " ' "ask itself whether *it* believes that the evidence . . . established guilt beyond a reasonable doubt." ' " (Emphasis in original.) *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983). Rather, the relevant question in our review " 'is whether, after viewing the evidence in the light most favorable to the prosecu-

tion, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson* v. *Louisiana,* 406 U.S. [356, 362, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972)].' " *State* v. *Scielzo,* supra, 197.

Applying these principles to the present case, we cannot find that the facts and inferences in this case did not reasonably permit a finding of guilty by the jury. The jury could reasonably have found that the evidence presented by the state established the elements of both the assault charge and the risk of injury charge. We conclude, therefore, that there was sufficient evidence to sustain the jury's verdict of guilty.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.