STATE OF CONNECTICUT *v.* JOSE LUIS GARCIA
(11805)

DUPONT, C. J., and O'CONNELL and LANDAU, Js.

Argued January 11—decision released April 25, 1995

*Scott Perry,* certified legal intern, with whom were *Brian J. Kornbrath* and, on the brief, *Timothy H.*

*Everett,* and *Kristen Miller* and *Christopher Drew,* certified legal interns, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Linda Howe,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2)[1] and one count of larceny in the first degree in violation of General Statutes §§ 53a-119 and 53a-122 (a) (3).[2] The defendant claims that the trial court improperly (1) denied his motions for judgment of acquittal on both charges when the evidence was insufficient to sustain his convictions, (2) instructed the jury on the larceny charge so as to allow a conviction of an uncharged offense, and (3) admitted a vial of crack cocaine into evidence.

The jury reasonably could have found the following facts. On February 7, 1991, Mark Krzos parked a black 1990 GMC Jimmy in a lot adjacent to his residence in West Haven. The following morning, he reported the vehicle missing. At about midnight on February 8, 1991, Edward J. Malvey left the Nutmeg-Bowl bowling alley in Fairfield and walked to his car, which was located in an isolated, dark area of the parking lot. As

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime . . . or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[2] General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."

General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (3) the property consists of a motor vehicle, the value of which exceeds ten thousand dollars . . . ."

he unlocked his car, a Jimmy approached slowly and stopped in front of his car. An individual exited from the passenger side door, walked toward Malvey and stated, "Hold it right there . . . ." Malvey described this person as a man smaller than himself, of medium height and build, with a dark complexion and wearing dark clothing. After patting down Malvey and taking his keys and wallet, the person told Malvey to lay face-down on the ground. That individual then began to search the inside of Malvey's car. While on the ground, Malvey was able to observe a weapon in the possession of the person searching his car. A second person approached and attempted to remove Malvey's wedding ring. While searching Malvey's car, the first person discharged a shot from his gun. Malvey saw him return to the Jimmy, apparently favoring his left leg and dragging a bowling ball bag with him. When the Jimmy sped away, Malvey was able to observe its license plate, which matched that of Krzos' missing vehicle. Malvey reported that a key ring, his wallet containing credit cards and $7 or $8 and a bowling ball bag with equipment in it had been stolen from him. A Fairfield police officer dispatched to the scene observed a .22 caliber casing beneath the passenger side seat of Malvey's vehicle.

At about 12:40 a.m. on February 8, 1991, Officer Angelo Pierce of the Bridgeport police department observed two men, one of whom was the defendant, standing on Pequonnock Street in Bridgeport next to a black GMC Jimmy with its lights on and motor running. This location is approximately a five to seven minute drive from the Nutmeg-Bowl in Fairfield. When Pierce pulled up behind the Jimmy, the second man, later identified as Francisco Rodriguez, walked to a Buick Riveria that was parked in front of the Jimmy. The defendant walked toward the officer's cruiser and

tossed an object into a grassy area. Pierce requested that the defendant sit in the cruiser while he retrieved the object, which proved to be Malvey's wallet.

An examination of the Jimmy revealed that the door lock and steering column were smashed and that the vehicle was running despite the absence of an ignition key. Inside the Jimmy were items later identified by Malvey as articles taken from him in Fairfield. During the investigation, Rodriguez left the scene in the Buick with an individual later identified as his brother and was stopped by the police two blocks away. As he exited the vehicle, Rodriguez almost fell, suffering from what was determined to be a gunshot wound to his leg.

The defendant began trial with Rodriguez as a codefendant. The trial court initially denied Rodriguez' motions to sever the trial. After jury selection had been completed, however, the court reconsidered the motion to sever and granted it.[3]

# I

## A

### ROBBERY OF EDWARD MALVEY

The defendant first claims that the trial court improperly denied his motion for judgment of acquittal as to the charge of robbery in the first degree. He argues that the state did not present sufficient evidence to establish that the defendant was the second person involved in the robbery of Malvey.

"In reviewing a jury verdict that is challenged on the ground of insufficient evidence, we employ a two part analysis. We first review the evidence presented at

---

[3] For our disposition of Rodriguez' appeal, see State v. Rodriguez, 37 Conn. App. 589, 658 A.2d 98 (1995). We note that there are minor discrepancies in the facts of these related opinions, irrelevant to our disposition of these cases, due to the different evidence and testimony presented at the two trials.

trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. . . . The evidence must be construed in a light most favorable to sustaining the jury's verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Ford*, 230 Conn. 686, 692, 646 A.2d 147 (1994). In reaching its verdict, "[i]t is within the province of the jury to draw reasonable and logical inferences from the facts proven . . . [as well as to] draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are 'so unreasonable as to be unjustifiable. . . .' " (Citations omitted.) Id.

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. *State* v. *Adams*, 225 Conn. 270, 276–77, 623 A.2d 42 (1993), quoting *State* v. *Stanley*, 223 Conn. 674, 678, 613 A.2d 788 (1992). Proof beyond a reasonable doubt requires that the evidence exclude every reasonable hypothesis of innocence. *State* v. *Little*, 194 Conn. 665, 671–72, 485 A.2d 913 (1984); *State* v. *Morrill*, 193 Conn. 602, 611, 478 A.2d 994 (1984). But the requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond a possible doubt, and a possible hypothesis or supposition of innocence is far different from a reasonable supposition. . . . Emphasis needs to be placed on the distinction between the word reasonable and the word possible. . . . Proof of guilt must

exclude every reasonable supposition of innocence
. . . [while a] mere possible hypothesis of innocence
will not suffice. . . . *State* v. *Little*, supra, 672; *State*
v. *Morrill*, supra, 611." (Citations omitted; internal quo-
tation marks omitted.) *State* v. *Ford*, supra, 230 Conn.
693.

Restated, the first issue in this case is whether the
jury could have drawn reasonable inferences from the
evidence presented at trial to enable it to conclude
beyond a reasonable doubt that it was the defendant
who accompanied Rodriguez in the robbery of Malvey.
The defendant argues that the only evidence linking
him to the robbery was Malvey's wallet, which he threw
aside as he approached Pierce. This evidence alone, he
asserts, cannot prove the disputed issue of identifica-
tion beyond a reasonable doubt. The state contends that
the defendant's conviction of robbery in the first degree
was based on reasonable inferences drawn from the evi-
dence presented. We agree.

" '[T]he possession of property recently stolen, if
unexplained and standing alone or without other facts
pointing to a contrary conclusion, will justify the trier
in drawing an inference that the possessor stole the
property, and the inference may be sufficiently strong
to warrant a conviction of a charge of theft.' *State* v.
*Palkimas*, 153 Conn. 555, 558–59, 219 A.2d 220 (1966);
*State* v. *Donnelly*, 124 Conn. 661, 663, 2 A.2d 214
(1938)." *State* v. *Higgins*, 201 Conn. 462, 473, 518 A.2d
631 (1986). "Possession of recently stolen property puts
the burden of explanation upon one charged with hav-
ing stolen it. . . . In other words, the circumstantial
evidence of possession of recently stolen property raises
a permissible inference of criminal connection with the
property, and if no explanation is forthcoming, the
inference of criminal connection may be as a principal
in the theft . . . depending upon the other facts and

circumstances which may be proven. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Palkimas*, supra, 559.

The fact that the defendant was in possession of Malvey's recently stolen wallet raised a permissible inference that he had stolen it. The defendant's explanation for his possession of the wallet was that he had picked it up from the ground when Rodriguez, whom he claimed not to have known, asked him for help. It was reasonable for the jury to reject this explanation and instead to rely on the inference. Moreover, the state presented other facts that tended to support the inference that the defendant had been involved in the robbery. The wallet that was in the defendant's possession had been the subject of a robbery less than one hour earlier. The robbery had occurred only a short distance from where the defendant was found to be in possession of the wallet. The defendant was standing next to the vehicle used in the robbery and was with a man who had suffered the injury described by Malvey. Also, following his arrest, the defendant evinced a consciousness of guilt by giving a false name to the police.

After a review of the record, we conclude that, on the basis of the facts established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established beyond a reasonable doubt that the defendant was the second person involved in the robbery of Malvey.

## B

### LARCENY OF THE MOTOR VEHICLE

The defendant also argues that the evidence was insufficient to sustain a conviction of larceny in the first degree. In the information, the state charged the defendant with larceny of a motor vehicle at two differ-

ent times and locations; both at the Nutmeg-Bowl in Fairfield and on Pequonnock Street in Bridgeport.[4] The defendant argues that the state did not present sufficient evidence to justify a conviction based on either charged theory of larceny. The state posits that it presented evidence sufficient to establish that the defendant had wrongfully withheld the Jimmy in Fairfield.

We have already set forth the appellate standard of review for sufficiency of the evidence claims in part I A of this opinion. A person commits larceny "when, with intent to deprive another of property or to appropriate the same to himself . . . he wrongfully takes, obtains, or withholds such property from an owner." General Statutes § 53a-119. In order to prove that the defendant wrongfully withheld the Jimmy, the state needed to establish that the defendant kept it in his possession or control. See Webster's Third New International Dictionary; see also General Statutes § 1-1 (a).

Further, to satisfy the specific intent element of the crime of larceny, the state needed to prove that the defendant intended to deprive another of property. "Generally, intent can be proved only by circumstantial evidence. *State* v. *Harrison*, 178 Conn. 689, 695, 425 A.2d 111 (1979); *State* v. *Bzdyra*, 165 Conn. 400, 403, 334 A.2d 917 (1973). ' "Intent may be, and usually is, inferred from conduct. *State* v. *Cofone*, 164 Conn. 162, 164, 319 A.2d 381 [1972]; *State* v. *Smith*, 157 Conn. 351, 354, 254 A.2d 447 [1969]. Intention is a mental process, and of necessity it must be proved by the statements or actions of the person whose act is being scrutinized. *State* v. *Cofone*, supra, 164; *State* v. *Mazzadra*, 141 Conn. 731, 735, 109 A.2d 873 [1954]. A person's

---

[4] "Where a charging document alleges, in the conjunctive, that an offense has been committed in more than one way, a guilty finding may stand if the evidence supports a conviction based upon any one of the statutory alternatives. *State* v. *Eason*, 192 Conn. 37, 42, 470 A.2d 688 (1984)." *State* v. *Wohler*, 231 Conn. 411, 415, 650 A.2d 168 (1994).

intention is to be inferred from his conduct. *Kiernan* v. *Borst*, 144 Conn. 1, 6, 126 A.2d 569 [1956]." *State* v. *Bzdyra*, [supra, 403].' *State* v. *Sober*, 166 Conn. 81, 92–93, 347 A.2d 61 (1974). Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide. *State* v. *Sober*, supra, 93." *State* v. *Morrill*, supra, 193 Conn. 609.

As discussed in part I A of this opinion, it was reasonable for the jury to conclude, on the basis of the cumulative evidence presented, that the defendant had accompanied Rodriguez in the robbery of Malvey at the Nutmeg-Bowl. The evidence also established that when the Jimmy stopped in front of Malvey's car, Rodriguez exited from the passenger side door of the vehicle. Once Rodriguez began to search Malvey's car, and before he shot himself in the leg, the second person, i.e., the defendant, approached him and attempted to take his wedding ring. Malvey testified that no other persons or vehicles were in the parking lot at that time. Thus, it was reasonable for the jury to conclude that the defendant had been the driver of the Jimmy.

" 'Ordinarily, guilty knowledge can be established only through an inference from other proved facts and circumstances. The inference may be drawn if the circumstances are such that a reasonable man of honest intentions, in the situation of the defendant, would have concluded that the property was stolen.' " *In re Adalberto S.*, 27 Conn. App. 49, 53, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992), quoting *State* v. *Fredericks*, 149 Conn. 121, 124, 176 A.2d 581 (1961). If the defendant was the driver of the Jimmy, he was in a position to know that the steering column had been smashed and that the vehicle was operational without an ignition key. These circumstances would lead " 'a reasonable man of honest intentions, in the

situation of the defendant, [to conclude] that the property was stolen.' " *In re Adalberto S.*, supra, 53. It was reasonable for the jury to conclude that the defendant's knowledge that the Jimmy had been stolen constituted sufficient evidence to support a reasonable inference that the defendant intended to commit larceny.

We conclude that, on the basis of the facts established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established beyond a reasonable doubt that the defendant wrongfully withheld the Jimmy from its owner while at the Nutmeg-Bowl in Fairfield.

## II

The defendant next claims that the trial court's instruction as to larceny effectively permitted the jury to convict him on the basis of an uncharged theory of liability, thereby violating his right to be informed of the nature and cause of the accusation against him as guaranteed by the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[5]

Specifically, the defendant argues that although the state charged him with two distinct theories of larceny,[6] the court's instructions allowed the jury to convict him

---

[5] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."

Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have a right . . . to be informed of the nature and cause of the accusation . . . ."

[6] In a long form information, the state charged the defendant with larceny in the first degree: "[1] at the Town of Fairfield . . . on the 8th day of February, 1991, at or about 12:10 a.m. at Nutmeg-Bowl, Villa Avenue, Fairfield; and [2] at the City of Bridgeport . . . on the 8th day of February, 1991, at or about 12:40 a.m. at the area of 88 Pequonnock Street . . . ."

on the basis of a third theory; that is, larceny in the city of West Haven on February 7, 1991. The defendant asserts that, despite the state's failure to charge that he took the Jimmy in West Haven, the court read the entire larceny statute and twice thereafter instructed the jury that the state must prove beyond a reasonable doubt that the defendant "wrongfully took, obtained, or withheld property from an owner." The court also provided the jury with separate definitions for "taking," "obtaining" and "withholding." Finally, the defendant maintains that the court marshaled the facts in support of the theft in West Haven.[7]

The defendant concedes that this claim was not properly preserved, but seeks review pursuant to the doctrine of *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), as reformulated in *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under the *Evans-Golding* test, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 239–40.

"In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the par-

---

[7] The defendant takes issue with the following statements made by the court to the jury: (1) "The [Jimmy] had been taken on the day before the robbery from the owner-possessor, Mark Krzos"; and (2) "Mr. Krzos testified that the [Jimmy] was his and that it was taken late in the day of February 7, 1991."

ticular circumstances." Id., 240. The defendant's claim does not meet the third requirement of the *Evans-Golding* test.

Both the United States and Connecticut constitutions guarantee a criminal defendant the right to be informed of the nature of the charge against him "with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise . . . . *State* v. *Scognamiglio*, 202 Conn. 18, 22, 519 A.2d 607 (1987), quoting *State* v. *Franko*, 199 Conn. 481, 490, 508 A.2d 22 (1986). In order for the defendant to establish an infringement of these constitutional rights, he must demonstrate that the court's charge caused him unfair surprise or prejudiced the preparation of his defense. *State* v. *Scognamiglio*, supra, 22." (Internal quotation marks omitted.) *State* v. *Trujillo*, 12 Conn. App. 320, 326, 531 A.2d 142, cert. denied, 205 Conn. 812, 532 A.2d 588 (1987).

The essence of the defendant's claim is that he was prejudiced in the preparation of his defense by the court's instruction. "In determining whether a defendant has been prejudiced in the preparation of his defense, we consider the nature of his defense advanced at trial in relation to the trial court's instruction. See *State* v. *Newton*, [8 Conn. App. 528, 536–37, 513 A.2d 1261 (1986)]. Where the record indicates that a defendant would not have changed his defense in any way had he actually been charged by the state with the particular theory of criminal liability upon which a trial court instructed the jury, the defendant's defense cannot be said to have been prejudiced. *State* v. *Scognamiglio*, supra, [202 Conn.] 22–23; *State* v. *Franko*, supra, [199 Conn.] 491. Thus, if the defendant's defense encompasses the uncharged theory of criminal liability as well as the charged theory, and, if believed by the jury, could lead to an acquittal under either theory, his constitutional rights have not been adversely implicated by the

trial court's instruction. *State* v. *Franko*, supra [491]."
*State* v. *Trujillo*, supra, 12 Conn. App. 326–27.

The defendant asserts that, because he relied on the specificity of the long form information, he failed to raise any defense to the West Haven "taking." He raised no alibi defense, failed to cross-examine on this issue, and presented no argument to rebut the allegation. The defendant's theory of defense concerned only the charged larcenies in Fairfield and Bridgeport. The theft of the Jimmy in West Haven occurred at a distinct time and location and encompassed a conceptually and statutorily different method of committing larceny. Consequently, we conclude that, because the defendant's defense did not encompass the uncharged theory of liability, he was prejudiced by the court's charge.

Our conclusion that the defendant was prejudiced by the court's jury charge does not end our analysis. We must next determine whether the court's improper charge constitutes reversible error. Such a determination hinges on whether it is reasonably possible that the jury was misled by the instruction. *State* v. *Belton*, 190 Conn. 496, 502, 461 A.2d 973 (1983); *State* v. *Trujillo*, supra, 12 Conn. App. 329. At the beginning of the trial, the court read the long form information to the jury, alerting it that the defendant was on trial for the specific charges of larceny in Fairfield and in Bridgeport. The information contained no reference to the West Haven theft. Also, the jury had the information to consult in its deliberations and the court explained in its charge that the information is the formal manner of accusing a person of a crime. While the state did present evidence that the Jimmy was stolen on February 7, 1991, it did so for the narrow purpose of showing that the vehicle was recently stolen. Likewise, in its charge, the court referred to this evidence in the context of relating that the state had presented

evidence that the defendant was not the owner of the Jimmy. In all other respects, the evidence presented and the arguments made at trial concerned the events in Fairfield and Bridgeport.

For these reasons, we conclude that it was not possible that the jury was misled to believe that it could convict the defendant of taking the Jimmy in West Haven. Therefore, because the alleged constitutional violation does not clearly exist and did not clearly deprive the defendant of a fair trial, he cannot prevail on this claim.

## III

Finally, the defendant claims that the trial court abused its discretion by permitting the state to introduce a crack vial into evidence. Sergeant James Woods of the Fairfield police department testified that he searched the Jimmy following the defendant's arrest. In the course of that search, he seized an empty crack vial. Following an objection and a brief argument, the vial was admitted into evidence.[8]

Initially, we note that the trial court's rulings on the admissibility of evidence are accorded great deference and will be disturbed on appeal only on a showing of clear abuse of discretion. *Ellice* v. *INA Life Ins. Co. of New York*, 208 Conn. 218, 222, 544 A.2d 623 (1988);

---

[8] Objecting to the introduction of the crack vial, the defendant stated: "The victim, Mr. Malvey, didn't claim [the vial] as his own. I think on the medical records it was indicated, I believe, that Rodriguez told the hospital staff that he used crack at some point. There's been no evidence about anything regarding my client with this exhibit, so I would ask since the victim disavows knowledge of it and there's nothing to connect it to my client, that it be stricken for the purposes of this trial. It's not relevant here."

The state responded: "Your Honor, I would claim it as relevant to the general circumstances. The fact that there were two participants indicated as involved in the robbery, I think evidence that might relate to one, at least relates to the other in that there is a correlation to one participant, at least indirectly shows a relationship to the second party as well."

*State* v. *Erhardt,* 17 Conn. App. 359, 367, 553 A.2d 188 (1989). " 'A trial court has broad discretion in its rulings on the relevance of evidence and in its determination of whether the probative value of evidence outweighs its prejudicial effect. Reversal is required only when there is an abuse of discretion or when an injustice has been done. *State* v. *Baskins,* 12 Conn. App. 313, 318, 530 A.2d 663, cert. denied, 205 Conn. 811, 532 A.2d 586 (1987).' " *State* v. *Sweeney,* 30 Conn. App. 550, 556, 621 A.2d 304, cert. denied, 225 Conn. 927, 625 A.2d 826 (1993).

Evidence is considered relevant when "it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. *State* v. *Sharpe,* [195 Conn. 651, 659, 491 A.2d 345 (1985)]; *State* v. *Mastropetre,* 175 Conn. 512, 517, 400 A.2d 276 (1978)." (Internal quotation marks omitted.) *Ellice* v. *INA Life Ins. Co. of New York,* supra, 208 Conn. 222, quoting *State* v. *Talton,* 197 Conn. 280, 285, 497 A.2d 35 (1985).

Applying these principles to the case at hand, we conclude that the trial court did not abuse its discretion in admitting the vial into evidence. The state's theory of the case was that the defendant and Rodriguez participated together in the charged crimes. One of the crucial evidentiary facts connecting the defendant to the robbery of Malvey was his association with and physical proximity to Rodriguez on Pequonnock Street in Bridgeport. Consequently, it was necessary for the state to connect Rodriguez to the robbery. The state sought to accomplish this by first establishing that Rodriguez was a drug abuser who had used crack on the evening of February 8, 1991. The state then sought to assert the possibility of a relationship between Rodriguez' drug use and the presence of the crack vial.[9]

[9] The state made no claim, argument or inference to attribute the possession of the crack vial to the defendant. The sole purpose of the introduc-

The trial court could reasonably have concluded, on the basis of the evidence before it, that the crack vial's presence in the Jimmy was sufficiently probative of a fact in issue; that is, that Rodriguez, with whom the defendant was associated, was a participant in the robbery. We conclude that the trial court did not abuse its discretion when it determined that the crack vial was relevant and, therefore, admissible evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

tion into evidence of the vial was to link Rodriguez, and, thus, the defendant, to the crime.