## STATE OF CONNECTICUT *v.* JOSEPH TORRICE
## (6528)

STOUGHTON, NORCOTT and FOTI, Js.

76

Argued June 21—decision released September 19, 1989

*Kent Drager,* assistant public defender, for the appellant (defendant).

*John O'Meara,* deputy assistant state's attorney, with whom were *Marcia Smith,* assistant state's attorney, and, on the brief, *John A. Connelly,* state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from the trial court's judgment of conviction, rendered after a jury trial, of one count of assault in the second degree in violation of General Statutes § 53a-60 (a) (1),[1] four

---

[1] General Statutes § 53a-60 provides in pertinent part: "ASSAULT IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon

counts of assault in the third degree in violation of General Statutes § 53a-61 (a) (1),[2] and five counts of risk of injury to a child in violation of General Statutes § 53a-21.[3] The defendant claims the trial court erred in that (1) it failed to add "judicial gloss" to its instructions to the jury concerning the crime of risk of injury to a minor, (2) it failed to instruct the jury in accordance with the provisions of General Statutes § 53a-18 (1), (3) there was insufficient evidence to convict him on two of the counts, (4) it failed to present the jury with the question of whether the victim's arm was broken in Connecticut or New York, (5) it failed to give the jury a unanimity charge, (6) it should have denied the state's motion in limine regarding cross-examination of one of the state's witnesses, (7) it should not have admitted evidence of the defendant's admission by

or a dangerous instrument; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or (4) for a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness or other physical impairment or injury to another person by administering to such person, without his consent, a drug, substance or preparation capable of producing the same; or (5) he is in the custody of the commissioner of correction, confined in any institution or facility of the department of correction, or is a parolee from a correctional institution and with intent to cause physical injury to an employee of the department of correction or an employee or member of the board of parole, he causes physical injury to such employee or member."

[2] General Statutes § 53a-61 (a) (1) provides: "ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon."

[3] General Statutes § 53-21 provides: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

silence, (8) the prosecutor's closing argument deprived the defendant of a fair trial, and (9) he was convicted in violation of his double jeopardy rights. We find no error.

From the evidence produced at trial, the jury could reasonably have found the following facts. The defendant lived with K and her two children in an apartment on Shag Road in Waterbury. The defendant is the father of K's son, but not of her three year old daughter, J, the victim in this case. The defendant's cousin, Vincent Mahoney, and his girl friend, Christine Hayes, also shared the apartment with the defendant.

All of the events that resulted in the charges against the defendant occurred between May 1 and May 18, 1986. On one occasion, J was sitting on a couch in the apartment with Hayes when the defendant came in and told her to get dressed. When she did not react, he called her "mental" and "stupid" and then forceably grabbed her by the arm, kicked her in the back and told her to get up.

On another occasion, the defendant was trying to teach J the alphabet. When she was unable to recite it, the defendant bit her on the nose causing her to bleed and scream.

Another incident arose when J wet her pants in Mahoney's car. The defendant and J were riding in the back seat of Mahoney's car while Mahoney and Hayes were in the front seat. When the defendant discovered that J had wet her pants, he picked her up and threw her to the floor of the car telling her if she wet her pants she belonged "on the floor like a dog." The defendant, who was wearing pointed western style boots, then kicked J in the back. When they arrived home, the defendant said he would change J and, in the presence of Mahoney, told her to take her clothes off. Once she

did, the defendant pinched J's genitalia and told her that the next time she wet her pants he would "burn it."

On another occasion, J wet her pants in the living room of the apartment. When the defendant noticed, he picked up J by the arm and pulled her to the bathroom and pushed her down on a child's potty seat. After some time had passed, the defendant went back to the bathroom, picked J up by the arm, and tried to kick the potty seat out from under her, but instead kicked her, in the thighs and buttocks.

In yet another incident, the defendant went to get J out of bed. He pulled her by the arm while she was still sleeping, and while telling her to get up, he dropped her to the floor from a height of four feet. He then grabbed J by the hair to stand her up and told her to get dressed. When J began to cry, he slapped her on the side of the head and kicked her in the back. The defendant was calling J "stupid" and "a retard" during this incident.

Another time, the defendant was playing with his son in the apartment and J was watching. When the defendant noticed J, he picked her up by the arms and began swinging her so that her feet hit the ceiling, her body was twisting, and she was screaming.

Finally, on May 18, 1986, J's grandmother took J to Waterbury Hospital after she noticed that J had numerous bruises and her left arm was swollen. J's injuries included bruises to her upper right arm, face, buttocks, knee, back and hip, and she had a scab on her nose and abrasions to her ears and genitalia. Her left arm recently had been fractured, and she had suffered fractures, at least two weeks old, to both shoulders and her right arm. J was diagnosed as being a victim of the 'battered child syndrome."

The defendant was arrested and charged with one count of assault in the second degree in violation of General Statutes § 53a-60, six counts of assault in the third degree in violation of General Statutes § 53a-61, and seven counts of risk of injury to a child in violation of General Statutes § 53a-21. The defendant pleaded not guilty and elected to be tried by a jury. During the trial, the state withdrew one charge of assault in the third degree and one count of risk of injury. The jury acquitted the defendant of one count of assault in the third degree and one count of risk of injury and convicted him of the ten remaining charges.

## I

The defendant's first claim of error is that the trial court erred in charging the jury on the crime of risk of injury to a child. The defendant claims that the trial court failed to add the "judicial gloss" that is necessary to prevent the statute from being unconstitutionally vague.

The defendant concedes that this issue was never raised at trial, but seeks review under the doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 526 (1973). Because the defendant has a due process right to correct jury instructions; *State* v. *Preyer,* 198 Conn. 190, 197, 502 A.2d 858 (1985); we will review this claim.

The defendant relies heavily on the case of *State* v. *Schriver,* 207 Conn. 456, 542 A.2d 686 (1988), asserting that it mandates that a trial court apply a judicial gloss when it instructs a jury on the elements of § 53-21. In *Schriver,* the defendant had followed the victim and then grabbed her around the waist while saying, "Don't worry, all I want to do is feel you." Id., 457. The court held that § 53-21 was unconstitutionally vague as applied to those facts (1) because the statute did not provide fair warning to the defendant that his conduct was prohibited and (2) because the defendant's conduct

did not "fall within the confines of § 53-21." Id., 466. In so holding, the court noted that the type of conduct prohibited by § 53a-21 had been limited by prior judicial gloss to instances of "deliberate, blatant abuse." Id. The court illustrated the "gloss" that limits the statute by referring to a string of cases in which the victims had been subject to flagrant physical abuse. See id.

Despite the defendant's averments, there is nothing in *Schriver* to suggest that it imposes a requirement that the court instruct the jury about the limited applicability of § 53-21. *Schriver* merely holds that conduct that does not rise to the level of flagrant physical abuse is not covered by the statute despite the statute's facially broad language. Id., 467. There can be no doubt that in this case the defendant's conduct constituted the kind of deliberate, flagrant abuse that is encompassed by the statute and its application cannot be questioned. See *State* v. *Pickering*, 180 Conn. 54, 65, 428 A.2d 322 (1980).

To the extent, however, that the defendant is actually claiming that the trial court's instructions were inadequate, we note that the trial court properly instructed the jury concerning the elements of § 53-21. The trial court told the jury that it was not permitted to find the defendant guilty for committing "any act," but must find that he acted wilfully and "that he either intended the resulting injury to the victim, or he knew that the injury would occur, or that his conduct was of such a character that it demonstrated a reckless disregard of the consequences." The trial court also instructed the jury on each risk of injury count by referring the jury to the specific abuse alleged by the state. Under these instructions, there is no danger that the jury convicted the defendant by an arbitrary and discriminatory application of the law.

## II

The defendant's second claim is that the trial court erred in failing to instruct the jury in accordance with the provisions of General Statutes § 53a-18 (1).[4] The defendant did not file a request to charge concerning this issue as required by Practice Book § 852.[5] Although the defendant admits that he failed to preserve this claim properly, he again asks for review under *State* v. *Evans,* supra. The defendant claims that such review is warranted because it is reasonably possible that the jury was misled on essential elements of the crimes with which he was charged. We disagree.

Under General Statutes § 53-18 (1), a person entrusted with the care of a minor may use reasonable physical force against the minor under certain circumstances. Pursuant to that statute, the defendant raises a defense that his use of force was justified. The state has "the burden of disproving such defense beyond a reasonable doubt." General Statutes § 53a-12 (a);[6] *State*

[4] General Statutes § 53a-18 (1) provides: "USE OF REASONABLE PHYSICAL FORCE OR DEADLY PHYSICAL FORCE GENERALLY. The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances: (1) A parent, guardian, teacher or other person entrusted with the care and supervision of a minor or an incompetent person may use reasonable physical force upon such minor or incompetent person when and to the extent that he reasonably believes it is necessary to maintain discipline or to promote the welfare of such minor or incompetent person."

[5] Practice Book § 852 provides: "The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

[6] General Statutes § 53a-12 (a) provides: "DEFENSES; BURDEN OF PROOF. (a) When a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt."

v. *Webley,* 17 Conn. App. 200, 203, 551 A.2d 428 (1988).
Although it is generally true that a defendant is entitled
to an appropriate defense instruction when it is war-
ranted by the evidence; see, e.g., *State* v. *Webley,* supra;
our Supreme Court has expressly stated that the trial
court does not have a constitutional duty to instruct
on a defense sua sponte. *State* v. *Preyer,* supra, 198
n.9. The defendant's claim, therefore, is not of constitu-
tional proportions and we decline to review it. Because
the language of General Statutes § 53a-18 (1) does not
impose a mandatory duty on the trial court to give such
an instruction, we also decline to review the claim under
the plain error doctrine. See Practice Book § 4185; see
also *State* v. *Thurman,* 10 Conn. App. 302, 309, 523
A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d
1152 (1987).

### III

The defendant's third claim of error challenges the
sufficiency of the evidence on counts one and twelve
of the information. Those counts stem from the alle-
gation in the information that the defendant broke the
victim's left arm; count one charged assault in the sec-
ond degree, and count twelve charged risk of injury
to a minor. This claim of error requires little discussion.

Our role in reviewing sufficiency of evidence claims
is well established. We construe the evidence presented
at trial in a light most favorable to sustaining the ver-
dict, and then determine whether the jury could rea-
sonably have found, upon the facts established and the
inferences reasonably drawn therefrom, that the cumu-
lative effect of the evidence established guilt beyond
a reasonable doubt. *State* v. *Cavallo,* 200 Conn. 664,
673, 513 A.2d 646 (1986); *State* v. *Braxton,* 196 Conn.
685, 691, 495 A.2d 273 (1985). Our review of the rec-
ord reveals that the jury was more than justified in find-
ing that the defendant engaged in a deliberate pattern

of violence against J, which included the breaking of her arm, and that he did so with the intent required by General Statutes §§ 53a-60 (a) (1) and 53-21. There is no merit to this claim of error.

## IV

In the defendant's fourth claim of error, he contends that the trial court erred in not presenting the jury with the factual question of whether J's left arm was broken in Connecticut or New York. Because the Connecticut courts have no jurisdiction over an offense committed in New York; see *State* v. *Amarillo,* 198 Conn. 285, 312, 503 A.2d 146 (1986); the defendant argues that he was denied "fundamental due process" by the trial court's failure to instruct the jury regarding the situs of the infliction of the particular injury in question.

The defendant failed to preserve this instructional claim of error at trial, but now seeks review under *Evans* and the plain error doctrine. Practice Book § 4185. We afford the defendant neither avenue of review.

At trial, the state presented sufficient evidence to allow the jury to reasonably conclude that the defendant had broken J's arm in Connecticut. The trial testimony of Mahoney and the defendant himself substantiated the state's claim that J's arm was broken before a trip to New Rochelle, New York.[7] Our review of the evidence reveals no evidence from which the jury could conclude that J broke her arm in New York. A trial court is not required to give any instruction unsupported by the evidence. See *State* v. *Gasparro,* 194 Conn. 96, 113, 480 A.2d 509 (1984), cert.

---

[7] The defendant told a New Rochelle police officer that J had broken her arm when she fell off of a retaining wall in Waterbury. At trial, he testified that she had hurt her arm when she fell down the cement stairs and that her arm was injured and "swelling up" before their trip to New York.

denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985). This claim of error, then, does not rise to the level of a fundamental constitutional issue reviewable under *Evans,* nor does it amount to injustice requiring review under the plain error doctrine. See Practice Book § 4185.

## V

The defendant's next claim is that the trial court erred by failing to give the jury a unanimity charge on counts four and seven.[8] Because the defendant failed to request such a charge, he again seeks *Evans* review. "[B]ecause the right to a unanimous verdict is a fundamental right and implicates the defendant's right to a fair trial, we will review an unpreserved claim that the trial court's instructions violated the defendant's right to a unanimous verdict. *State* v. *Suggs,* 209 Conn. 733, 760, 553 A.2d 1110 (1989); *State* v. *Evans,* [supra, 70]." *State* v. *Spigarolo,* 210 Conn. 359, 388, 556 A.2d 112 (1989).

"The rule requiring a specific unanimity charge 'only applies when the *particular count* under consideration by the jury is based on multiple factual allegations which amount to multiple statutory subsections or multiple statutory elements of the offense involved. It does not apply, and such an instruction is not required of the court, where the multiple factual allegations do not

---

[8] Counts four and seven of the state's substitute information read as follows:

"On the fourth count the State further accuses the said JOSEPH TORRICE and charges that in the City of Waterbury on divers days, May 1 to May 18, 1986, the said JOSEPH TORRICE did commit the offense of assault in the third degree in violation of Conn. Gen. Stat. 53a-61 (a) (1) in that he kicked the defendant in the lower back and buttocks.

"On the seventh count the State further accuses the said JOSEPH TORRICE and charges that at the City of Waterbury on or about May 1, 1986, to May 18, 1986, the said JOSEPH TORRICE did commit the crime of risk of injury to a minor in violation of Conn. Gen. Stat. 53-21 in that he kicked the victim in the buttocks and lower back."

amount to multiple statutory subsections or to multiple statutory elements of the offense.' *State* v. *Mancinone,* 15 Conn. App. 251, 274, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989)." (Emphasis added.) *State* v. *Thomas,* 19 Conn. App. 44, 46, 560 A.2d 486 (1989).

In this case, the defendant was charged in separate and distinct counts with violations of § 53-21 and § 53a-61 (a) (1). The charges within those counts did not involve multiple statutory elements or subsections, and therefore the unanimity principle does not apply here. Cf. *State* v. *Ostolaza,* 20 Conn. App. 40, 564 A.2d 324 (1989). We note also that the evidence itself was not complex and did not create the danger of confusion. See *State* v. *Bailey,* 209 Conn. 322, 337, 551 A.2d 1206 (1988). Moreover, the trial court instructed the jury that "the same act or actions may involve the commission of two or more criminal acts, and the same evidence may be relevant to several crimes, *but you must consider each separate act.* You must . . . review all the evidence and determine separately each count." (Emphasis added.) After reviewing the allegations in each of the counts, the court further instructed the jury that its verdict had to be unanimous as to "each of the crimes charged in each of the counts." This instruction was sufficient correctly to apprise the jury that it had to be unanimous in its verdict as to each count. There is no merit to this claim.

VI

The defendant next claims that the trial court erred in granting the state's motion in limine thereby restricting his ability to cross-examine Mahoney about interest, bias and motive in testifying against the defendant, based on the large number of pending criminal charges against Mahoney. We disagree.

At the time of trial, Mahoney, a key state's witness, was incarcerated on twenty-seven pending felony charges. During Mahoney's direct examination, the state made a motion in limine that the defense not be allowed to use any of Mahoney's pending charges for the purpose of impeachment. The defendant objected and indicated that he also intended to cross-examine Mahoney as to any agreements and expectations he might have concerning the pending charges because of his testimony in the defendant's case.

The trial court initially ruled that the defendant could ask Mahoney about the *number* of pending charges against him, but that he could not question about the circumstances of each individual charge. The court also indicated that the defendant could not question Mahoney about the existence of any formal agreement regarding a plea bargain in consideration of Mahoney's testimony. The court stated that it felt bound by the state's representation that no such agreement existed.[9]

"The right of an accused effectively to cross-examine an adverse witness is embodied in the confrontation clause of the sixth amendment. *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Heinz,* 3 Conn. App. 80, 85–86, 485 A.2d 1321 (1984). A claim of undue restriction on cross-examination ordinarily involves a two-pronged analysis: (1) whether the constitutional standard has been met; and (2) if so,

---

[9] At trial the following exchange took place:

"The Court: That is not your claim, though, that the pending charges in any way are going to be considered because of his testimony here. Is that your claim?

"Mr. Crozier [the defendant's lawyer]: I am going to ask him that. I am certainly going to get into that, Your Honor. I want him under oath to tell me no. His lawyer told me no, but I have a right to ask under oath.

"The Court: If he says no as of the time now, the court only has the evidence that is going to be no, and I have to take the representations of the state's attorney that there isn't such thing and it won't open the door, I am going to sustain the objection of the state."

whether the court nonetheless abused its discretion. *State* v. *Heinz,* supra, 86. 'The constitutional standard is met when defense counsel is "permitted to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." ' *State* v. *Gaynor,* 182 Conn. 501, 509, 438 A.2d 749 (1980), quoting *Davis* v. *Alaska,* supra, 318." *State* v. *Diorio,* 12 Conn. App. 74, 76, 529 A.2d 1320, cert. denied, 205 Conn. 813, 532 A.2d 587 (1987), cert. denied, 484 U.S. 1065, 108 S. Ct. 1025, 98 L. Ed. 2d 990 (1988).

Against this analysis, we find no error regarding this claim. First, the defendant was allowed to cross-examine Mahoney about whether there was a formal agreement between him and the state. During the cross-examination of Mahoney, defense counsel and the trial court engaged in the following colloquy held outside the presence of the jury:

"Mr. Crozier: I want to get into whether he has made plea bargains.

"The Court: That you can do."

Shortly thereafter, the following exchange occurred during the actual cross-examination of Mahoney:

"Mr. Crozier: Have you been offered or promised anything in exchange of testifying?

"Vincent Mahoney: Absolutely not, no."

Thus, despite the trial court's prior indication, the defendant cross-examined Mahoney about plea bargains in exchange for trial testimony, and the witness unequivocally denied any such agreement.

Furthermore, the record clearly reveals that the court allowed the defendant to cross-examine Mahoney concerning the circumstances of some of the individual

pending charges, even though the court ultimately reaffirmed its earlier ruling and stopped the defendant from continuing such a line of questioning. It is disingenuous for the defendant to suggest that the constitutional standard expressed in *State* v. *Gaynor,* supra, has not been met. It is clear from the record that the defendant was " 'permitted to expose to the jury the fact from which the jurors . . . could appropriately draw inferences relating to the reliability of the witness.' " Id.

With respect to the second prong of the analysis, we note that " '[t]o establish an abuse of discretion, appellants must show that the restrictions imposed upon their cross-examination were clearly prejudicial.' " Id., 510. Our careful review of the record leads us to conclude that the defendant was given sufficient opportunity to cross-examine Mahoney to demonstrate bias, prejudice or improper motive. "When the right to cross-examine for this purpose is not altogether denied, the scope of such examination rests in the court's discretion. [*State* v. *Luzzi,* 147 Conn. 40, 47, 156 A.2d 505 (1959)]." *State* v. *Shipman,* 195 Conn. 160, 163, 486 A.2d 1130 (1985); *State* v. *Diorio,* supra. Here, we conclude that there was no abuse of the trial court's discretion.

## VII

The defendant next contends that the trial court erred in admitting a statement made in his presence as evidence of an admission by silence. During its case-in-chief, the state called Officer Peter Vitro of the New Rochelle, New York, police department as a witness. Vitro testified that on May 17, 1986, he investigated a citizen's complaint of possible child abuse involving J. The defendant, Hayes, Mahoney, and K and her two children, had travelled to New Rochelle on that day. During the course of the investigation, Vitro asked the

defendant about J's injuries, and the defendant responded that J had fallen off a bicycle and over a retaining wall in Waterbury. Vitro also questioned K about the injuries, and she responded that on May 14, 1986, she and the defendant had taken J to Saint Mary's Hospital in Waterbury. Vitro then testified that the defendant, who was present and within earshot of K's statement, made no reply or comment. The state later introduced hospital records that indicated that no such visit had taken place on that date.

The defendant objected to the testimony on K's statement as hearsay, and the state first sought to have the statement admitted as "adoptive hearsay." The court rejected this basis for the offer, but allowed the statement because "[i]t was the type of accusation where ordinarily a person would deny it." It is clear from the transcript of the trial that the court regarded the defendant's silence upon hearing K's statement as an admission by silence or an adoptive admission. See *State* v. *Harris,* 182 Conn. 220, 229, 438 A.2d 38 (1980).

"The rule in Connecticut is that when a statement, accusatory in nature, made in the presence and hearing of an accused, is not denied or explained by him, it may be received into evidence as an admission on his part. *State* v. *Leecan,* 198 Conn. 517, 522, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Cook,* 174 Conn. 73, 76, 381 A.2d 563 (1977); *State* v. *Yochelman,* 107 Conn. 148, 152, 139 A. 632 (1927)." *State* v. *Daniels,* 18 Conn. App. 134, 138, 556 A.2d 1040 (1989). The inference of assent, however, may be made only when no other explanation is equally consistent with silence. *State* v. *Harris,* supra.

In the present case, the state concedes, and we agree, that K's statement "did not fit strictly within the confines of the rule enunciated in *Harris* since [K's] com-

ment was a misstatement by her, not accusatory in nature, and, therefore, apparently would not naturally call for a reply from the defendant." In addition to the fact that K's statement lacked the characteristics of accusation, there were also a number of plausible explanations for the defendant's failure to respond, including his desire not to compound the problem of the damaging misstatement for K, a person with whom he lived in a family-type relationship.

Nonetheless, the state argues that although the trial court may have improperly admitted K's statement as an adoptive admission, the defendant has failed to demonstrate the harmfulness of that error. We agree.

We first note that the defendant's evidentiary claim does not involve the violation of a constitutional right. "It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985). The question is whether the claimed erroneous action of the trial court is likely to have affected the result of the trial. *State* v. *Brown,* 199 Conn. 14, 25, 505 A.2d 690 (1986); *State* v. *Gonzales,* 196 Conn. 115, 119, 491 A.2d 1067 (1985). Under this standard the defendant's claim fails.

The essence of the defendant's claim of harmfulness is that, during the state's final argument to the jury and as a part of the state's response to the defendant's motion for judgment of acquittal, the state "relied heavily" on the theory of consciousness of guilt as shown by the defendant's silence. He claims that the harmfulness of the error is especially relevant to counts one and twelve of the information (concerning J's broken arm) because there was no direct evidence of how that injury occurred and that "[i]t is probable that the jury

relied on this evidence in reaching their verdicts. . . ." We reject the defendant's contention.

As part of its case-in-chief, the state presented evidence in the form of eyewitness testimony and medical records regarding all of J's injuries. From that testimony, the jury could have concluded that the defendant not only broke J's arm, but caused her other injuries as well. With respect to J's broken arm, the state also introduced into evidence the totally contradictory explanation of the defendant himself, an explanation which obviously was rejected by the finders of fact.[10] Given the weight of the state's evidence against the defendant in this case, the defendant's claim that the erroneously admitted evidence in question was clearly prejudicial to him is without merit.

## VIII

The defendant next claims that the prosecutor's statement made during her closing argument regarding the meaning of "proof beyond a reasonable doubt" constituted a violation of the defendant's constitutional right to a fair trial. "It is fundamental that proof of guilt in a criminal case must be beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *United States* v. *Pine,* 609 F.2d 106, 107 (3d Cir. 1979); *State* v. *Mason,* 186 Conn. 574, 585, 442 A.2d 1335 (1982); *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982); *State* v. *Smith,* 183 Conn. 17, 27–28, 438 A.2d 1165 (1981)." *State* v. *DelVecchio,* 191 Conn. 412, 419, 464 A.2d 813 (1983). The defendant again seeks *Evans* review for this unpreserved claim of error. Because the right implicated is the defendant's right to be convicted by the proper burden of proof, we will grant *Evans* review. See *State* v. *Findlay,* 198 Conn. 328, 345, 502 A.2d 921,

[10] See footnote 7, supra.

cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986). The claim, however, requires little discussion.

During the state's closing argument, the prosecutor gave the following example of the concept of reasonable doubt: "I know that it sounds like a confusing term. But, ladies and gentlemen, everyday of your lives, you make decisions beyond a reasonable doubt. And, that simply is the fact that [if] there is no evidence in front of you that something should be different then you accept what you have in front of you.

"And, let me give you an example. I always think examples are so much easier. When you drove to work this morning . . . [t]here was probably another car coming in the other direction. You looked at the car. The wheels weren't wobbling, it wasn't crossing over the line, it wasn't doing anything that you felt that looked immediately dangerous to you.

"So you made a decision beyond a reasonable doubt to proceed in the manner you were and let that car go.

"Is it possible that the car could have veered off and hit you? Of course, it was. Things are always possible . . . . But, if you do not have any evidence in front of you, then you can make a decision beyond a reasonable doubt as an everyday occurrence in your life." The defendant argues that this example used by the prosecutor to explain "reasonable doubt" impermissibly diluted the state's burden of proof and thus constituted reversible error. We disagree.

We begin by noting that this claim of error is couched in terms of the prosecutorial misconduct amounting to a denial of the defendant's due process right to a fair trial. " '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.'

*Smith* v. *Phillips,* 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982); *State* v. *Cosgrove,* 186 Conn. 476, 489, 442 A.2d 1320 (1982)." *State* v. *Couture,* 194 Conn. 530, 562, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). Although we find that the prosecutor's attempt to explain the term "reasonable doubt" was inartful, we conclude that the defendant was not denied his right to due process and a fair trial as a result of that action.

Although the defendant requested no curative instruction from the court, we note that the court very adequately instructed the jury as to the concept of reasonable doubt. Additionally, the trial court properly instructed the jury that it was the court's function to instruct on the law and that the jury was bound by oath to accept only those instructions as given by the court.[11] "It is reasonable to presume that jurors will adhere to the court's instructions." *State* v. *McCall,* 187 Conn. 73, 80, 444 A.2d 896 (1982); *State* v. *Nelson,* 17 Conn. App. 556, 568, 555 A.2d 426 (1989). Furthermore, the prosecutor herself mitigated any possible effect of her challenged comments when she informed the jury of the following: "Anything which I say to you about the law which differs from the way Judge Meadow gives it to you, you must disregard what I say and take what he says."

On the basis of this review of the record, we conclude that there is no merit to the defendant's claim.

---

[11] The trial court instructed the jury as follows: "We are both judges in a very real sense. I am a judge of the law, and you are the judges of the facts. I now instruct you that each of you is bound to accept the law as I give it to you. It is your duty to follow my instructions and conscientiously apply the law as I give it to you.

"So, if you have a notion of what the law is or should be that differs from what I state the law is, you are bound by your oath to set aside your notion of the law and strictly apply the law as I state it to be."

## IX

The defendant's final claim of error is that his constitutional right against double jeopardy was violated by his convictions of assault in the second degree or assault in the third degree in addition to risk of injury, for the same behavior.[12] The defendant acknowledges that these statutes generally do not constitute one offense for double jeopardy purposes. See *State* v. *Davis,* 13 Conn. App. 667, 671, 539 A.2d 150 (1988); *State* v. *Trujillo,* 12 Conn. App. 320, 334–36, 531 A.2d 142 (1987). He claims, however, that the judicial gloss of *State* v. *Schriver,* supra, has interpreted the risk of injury statute as embodying the same type of mental state as the assault statutes, that is, specific intent. This claim is without merit.

While the assault statutes require specific intent to cause injury, our Supreme Court has recently reiterated that the risk of injury statutes require only a "general intent on the part of the defendant to perform the act which resulted in the injury . . . ." *State* v. *McClary,* 207 Conn. 233, 240, 541 A.2d 96 (1988). Contrary to the defendant's contention, nothing in *State* v. *Schriver,* supra, decided less than a month after *McClary,* suggests that the risk of injury statute, which forbids conduct that is likely to injure the health of a child, requires specific intent. "The defendant on appeal bears the burden of proving that the prosecutions are for the same offense in law and fact." *State* v. *Snook,* 210 Conn. 244, 264, 555 A.2d 390. Because we conclude that the offenses as charged in the information are distinct and separate for the purposes of double jeopardy,

---

[12] We note that, although the defendant seeks *Evans* review of this claim, the claim was properly preserved in the trial court during the defendant's motion for judgment of acquittal argued prior to his sentencing.

the defendant has not met this burden, and his double jeopardy claim must fail.[13]

There is no error.

In this opinion the other judges concurred.

---

[13] The defendant also claims that the language used in the information indicates that the crimes of risk of injury could not have been committed without having committed the crime of assault, and therefore that conviction of both assault and risk of injury violates his right against double jeopardy. After carefully reviewing the entire record, we conclude that the defendant takes far too narrow a view of the language used.