[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Petitioner, Joseph Torrice, has petitioned this court for a writ of habeas corpus dated May 9, 1997.[1] The petitioner claims that his present confinement in the custody of the commissioner of correction is unlawful because he was denied the effective assistance of counsel in his underlying criminal prosecution. Specifically,[2] the petitioner alleges that his trial counsel was ineffective in that he failed to file a request to charge the jury in accordance with the provisions of General Statutes § 53a-18(1).[3] The petitioner seeks the following relief: "(1) A writ of habeas corpus be issued to bring him before this court in order that justice may be done; (2) That the judgment . . . be vacated and the matter returned to the trial court docket for further proceedings according to law; and (3) such other relief as law and justice require." PETITION, p. 4. For the following reasons the petitioner's request is denied.
On October[4] 21-22, 1998,[5] the court conducted an evidentiary hearing on this petition during which time the court heard oral testimony and received documents into evidence, including a transcript of the petitioner's trial. Based upon the evidence adduced at the habeas hearing, the court makes the following findings and order.
 I.
The petitioner is currently an inmate in the custody of the commissioner of correction. On May 15, 1987, following a trial in the Superior Court, Judicial District of Waterbury, the petitioner was found guilty in Docket Number CR4-128483 of Assault in the Second Degree in violation of General Statutes53a-60, four counts of Assault in the Third Degree in violation of General Statutes § 53a-61, and five counts of Injury or Risk of Injury to a Child in violation of General Statutes §53-21. Thereafter, the petitioner was sentenced by the court to a total effective sentence of fifteen years confinement in the custody of the commissioner of correction.
During his criminal trial, the petitioner was represented by Attorney Ralph C. Crozier. The state was represented by Assistant State's Attorney Marcia Smith. CT Page 9603
The petitioner's conviction was upheld on direct appeal.State v. Torrice, 20 Conn. App. 75, 564 A.2d 330 (1989), cert. denied, 213 Conn. 809, 568 A.2d 794 (1989).
The Appellate Court found that the jury could have reasonably found the following facts. "The defendant lived with K and her two children in an apartment on Shag Road in Waterbury. The defendant is the father of K's son, but not of her three year old daughter, J, the victim in this case. The defendant's cousin Vincent Mahoney, and his girl friend, Christine Hayes, also shared the apartment with the defendant.
"All of the events that resulted in the charges against the defendant occurred between May 1, and May 18, 1986. On one occasion, J was sitting on a couch in the apartment with Hayes when the defendant came in and told her to get dressed. When she did not react, he called her `mental' and `stupid' and then forcibly grabbed her by the arm, kicked her in the back and told her to get up.
"On another occasion, the defendant was trying to teach J the alphabet. When she was unable to recite it, the defendant bit her on the nose causing her to bleed and scream.
"Another incident arose when J wet her pants in Mahoney's car. The defendant and J were riding in the back seat of Mahoney's car while Mahoney and Hayes were in the front seat. When the defendant discovered that J had wet her pants, he picked her up and threw her to the floor of the car telling her if she wet her pants she belonged `on the floor like a dog.' The defendant, who was wearing pointed western style boots, then kicked J in the back. When they arrived home, the defendant said he would change J and, in the presence of Mahoney, told her to take her clothes off. Once she did, the defendant pinched J's genitalia and told her that the next time she wet her pants he would `burn it.'
"On another occasion, J wet her pants in the living room of the apartment. When the defendant noticed, he picked J up by the arm and pulled her to the bathroom and pushed her down on a child's potty seat. After some time had passed, the defendant went back to the bathroom, picked J up by the arm, and tried to kick the potty seat out from under her, but instead kicked her in the thighs and buttocks. CT Page 9604
"In yet another incident, the defendant went to get J out of bed. He pulled her by the arm while she was still sleeping, and while telling her to get up, he dropped her to the floor from a height of four feet. He then grabbed J by the hair to stand her up and told her to get dressed. When J began to cry, he slapped her on the side of the head and kicked her in the back. The defendant was calling J `stupid' and `a retard' during this incident.
"Another time, the defendant was playing with his son in the apartment and J was watching. When the defendant noticed J, he picked her up by the arms and began swinging her so that her feet hit the ceiling, her body was twisting, and she was screaming.
"Finally, on May 18, 198, J's grandmother took J to Waterbury Hospital after she noticed that J had numerous bruises and her left arm was swollen. J's injuries included bruises to her upper right K arm, face, buttocks, knee, back and hip, and she had a scab on her nose and abrasions to her ears and genitalia. Her left arm had recently been fractured, and she had suffered fractures, at least two weeks old, to both shoulders and her right arm. J was diagnosed as being a victim of the `battered child syndrome.'" State v. Torrice, supra, 20 Conn. App. 78-80.
The petitioner was arrested on May 20, 198G. and "charged with one count of assault in the second degree in violation of General Statutes 53a-60, six counts of assault in the third degree in violation of General Statutes 53a-61, and seven counts of risk of injury to a child in violation of General Statutes53-21. The defendant pleaded not guilty and elected to be tried by a jury. During the trial, the state withdrew one charge of assault in the third degree and one count of risk of injury. The jury acquitted the defendant of one count of assault in the third degree and one count of risk of injury and convicted him of the ten remaining charges." State v. Torrice, supra,20 Conn. App. 80.
 II.
The petitioner claims that Attorney Crozier's failure to "request a jury instruction on justification (C.G.S. § 53a-18
(a)), despite adducing evidence in support of the discipline/justification theory of defense and arguing that theory in closing argument" was deficient and this deficiency prejudiced CT Page 9605 him. PETITIONER'S BRIEF, pp. 1, 3-4. The petitioner claims that had Attorney Crozier requested the charge, it would have been reversible error for the trial court to not give the instruction and there is a reasonable probability that the instruction would have led the jurors to a different verdict on at least some of the charges. PETITIONER'S BRIEF, 3-4. This court disagrees.
The petitioner's right to effective assistance of counsel is assured by the sixth and fourteenth amendments to the United States constitution and by article first, section 8, of the Connecticut constitution. Copas v. Commissioner, 234 Conn. 139,153, 662 A.2d 718 (1995). In order for the petitioner to succeed in his claim that he was denied effective assistance of counsel during his criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Copas v. Commissioner, supra, 153; Bunkley v. Commissioner, 222 Conn. 444, 445, 610 A.2d 598
(1992).
To prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989). Competent representation is not representation without error. "The constitution guarantees only a fair trial and a competent attorney; it does no ensure that every conceivable constitutional claim will be recognized and raised." (Internal, quotation marks omitted.) Jeffrey v, Commissioner, 36 Conn. App. 216, 219,650 A.2d 602 (1994). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (internal quotation marks omitted.) Johnson v. Commissioner,36 Conn. App. 695, 703, 652 A.2d 1050, cert. denied, 233 Conn. 912,659 A.2d 183 (1995).
In Strickland the Supreme Court opined: "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the CT Page 9606 distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered trial strategy." Stricklandv. Washington, supra, 466 U.S. 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) Strickland v.Washington, supra, 466 U.S. 690; Quintana v. Warden, 220 Conn. 1,5, 593 A.2d 964 (1991); Williams v. Warden, 217 Conn. 419, 423,586 A.2d 582 (1991)." Jeffrey v. Commissioner, supra,36 Conn. App. 219-220.
The prejudice component of the Strickland test, requires the petitioner to demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. If Strickland v. Washington, supra, 466 U.S. 687. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." Id., 693. Rather, a successful petitioner is required to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v. Commissioner, supra, 234 Conn. 147. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome."Strickland v. Washington, supra, 694.
 A.
"A fundamental element of due process is the right of a defendant charged with a crime to establish a defense." (Internal quotation marks omitted.) State v. Belle, 215 Conn. 257, 273,576 A.2d 139 (1990), quoting Washington v. Texas, 388 U.S. 14, 19,87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)." State v. Person,236 Conn. 342, 347, 673 A.2d 463 (1996). Therefore," [w]hen there is evidence indicating the availability of a recognized defense, a defendant is entitled as a matter of law to a theory of defense instruction. State v. Webley, 17 Conn. App. 200, 204, CT Page 9607551 A.2d 428 (1988); see State v. Belle, [supra, 273]. However, the court . . . has a duty not to submit to the jury, in its charge, any issue upon which the evidence would not reasonably support a finding. State v. Diggs, 219 Conn. 295, 299, 592 A.2d 949 (1991); see State v. Williams, 202 Conn. 349, 364, 521 A.2d 150 (1987)." (Internal quotation marks omitted.) State v. Connelly,46 Conn. App. 486, 507, 700 A.2d 694 (1997), cert. denied, 244 Conn. 907,714 A.2d 3 (1998). In reviewing the petitioner's claim that his attorney should have requested an instruction on justification, the habeas court looks at the evidence that was before the trial court in the light most favorable to the petitioner's claim.State v. Fuller, 199 Conn. 273, 278-279, 506 A.2d 556 (1986) "It is well established in Connecticut that a defendant is entitled to have the jury instructed on any general defense for which there is any foundation in the evidence, no matter how weak or incredible. This standard is appropriate when a defendant raises a general defense and the state has the burden of disproving that defense beyond a reasonable doubt."[6] (Internal quotation marks and citations omitted.) State v. Person, supra, 352.
Even if this court presumes that the instruction would have been given if requested,[7] Attorney Crozier's failure to request the instruction was not deficient performance. Rather, Attorney Crozier's decision to not pursue the justification defense was a sound trial tactic. The core of the petitioner's defense was that he did not commit the acts which resulted in J's injuries. Rather, it was the petitioner's contention that J received her injuries when she fell off of a child's "big-wheel" toy, subsequently fell off of a retaining wall and then a few days later fell down cellar stairs. PETITIONER'S EXHIBIT "2",Trial Transcript pp. 167-69, 189-90 (Meadow, J., March 23, 1987). Because the petitioner adamantly denied causing the victim's injuries, the only way in which justification could have been relevant to the petitioner's defense is if it was pleaded in the alternative. "Although it is true that a defendant is legally permitted to raise inconsistent defenses, when he does so a jury, applying its common sense, is entitled to view with skepticism the persuasiveness of all of the defenses)' (Citations omitted.)State v. Shabazz, 246 Conn. 746, 764, 719 A.2d 440 (1998). The petitioner argues that Attorney Crozier should have pursued two theories of defense with the jury: (1) "I didn't do it"; and (2) "If I did do it, I was justified." However, faced with such inconsistent purported states of mind it is likely that the jury would have rejected both defenses. Id., 765; State v. Person, CT Page 9608 supra, 236 Conn. 359 (Borden, J., concurring) ("[W]hen a defendant takes truly inconsistent positions, it will be `self penalizing' because it will invite prosecutorial argument pointing out the inconsistency, and will encourage jury skepticism about his entire defense." (Citations omitted.));State v. Munoz, 233 Conn. 106, 114-15 n. 5, 659 A.2d 683 (1995). At the habeas hearing, Attorney Crozier explained that he was aware of the risks of pleading in the alternative and decided that it was not a tactic he felt he should "go with."[8] HABEASTRANSCRIPT I, p. 39; see also "PETITIONER'S EXHIBIT 31", pp. 9-10, 16-17.[9] This court finds that Attorney Crozier was not deficient in failing to pursue a jury instruction on the issue of discipline as justification. Attorney Crozier was legitimately concerned that the jurors, having heard testimony on the nature of the injuries suffered by the victim and the defendant's direct denials, would be hostile to a justification defense which would have required them to find that the petitioner had in fact caused the injuries, but had been justified in his actions. The petitioner has failed to satisfy the first prong of theStrickland test. Because counsel's performance was not deficient, the petitioner could not have been prejudiced.
 B.
However, even if this court were to find that counsel's failure to seek a justification instruction was not a sound trial tactic, this court finds that the petitioner's claim can be disposed of because the petitioner has failed to demonstrate that he suffered sufficient prejudice. Constantopolous v.Commissioner, 47 Conn. App. 828, 833, 708 A.2d 588, cert. denied,244 Conn. 927, 711 A.2d 726 (1998) ("`If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" Strickland v.Washington, 466 U.S. 697). In order for a petitioner to establish that he has been prejudiced, he must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.Copas v. Commissioner, supra, 234 Conn. 147. At the petitioner's trial there was testimony from medical doctors diagnosing the victim — who suffered from bruises to her upper right arm, face, buttocks, knee, back, and hip, a scab on her nose, abrasions to her ears and genitalia, and fractures to both shoulders and both arms — with battered child syndrome. State v. Torrice, supra,20 Conn. App. 79; PETITIONER'S EXHIBIT "2", Trial Transcript pp. 61-89 (March 10, 1987). Two witnesses testified to having seen the CT Page 9609 petitioner grab the victim, elbow the victim, kick the victim, bite the victim, dunk the victim under water, throw the victim, pinch the victim, swing the victim, push the victim, and drop the victim. State v. Torrice, supra, 78-79; PETITIONER'S EXHIBIT "2",Trial Transcript pp. 93-95, 105, 114-15, 117-18, 121 (March 11, 1987); PETITIONER'S EXHIBIT "2", Trial Transcript pp. 94-95, 100-03, 105 (March 12, 1987); PETITIONER'S EXHIBIT "2", pp. 25, 30,35-36, 118 (March 13, 1987). Finally, the petitioner testified that he did not kick, slap, bite, elbow, pinch, throw, dunk or do anything else to the child to cause her injuries. PETITIONER'SEXHIBIT "2", Trial Transcript pp. 155-56, 200-02, 204 (March 23, 1987); PETITIONER'S EXHIBIT "2", pp. 17-20, 24-25, 31, 36, 59-60, 63-64, 67-68, 143, 166 (March 24, 1987). Though he admitted that he had at times "whack[ed]" the child on the rear end;PETITIONER'S EXHIBIT "2", Trial Transcript p. 195 (March 23, 1987); and had once "slapped" her on the hand; PETITIONER'SEXHIBIT "2", Trial Transcript p. 181 (march 24, 1987); he attributed her injuries to falling off of a big wheel and a retaining wall on one afternoon and then falling down cellar stairs a few days later. PETITIONER'S EXHIBIT "2", pp. 167-69, 189-90. It is incredibly unlikely that having heard all of this testimony, the jury would have been persuaded by a justification instruction to find that the defendant had caused all or some of the victim's injuries in the course of disciplining the child. This court agrees with the appellate court that the petitioner engaged in a deliberate and flagrant pattern of violence against the victim; State v. Torrice, supra, 20 Conn. App. 81, 83 84; and furthermore, is unpersuaded that an instruction on the defense of justification would have done anything other than "encourage jury skepticism about his entire defense." State v. Person, supra,236 Conn. 359. Under these circumstances, the petitioner has failed to demonstrate that he suffered sufficient prejudice, if any prejudice at all.
 C.
The petitioner also claims that Attorney Crozier's "ill health and conflicting deadlines impaired counsel's performance" in "request[ing] any jury instruction on the justified use of force for discipline." PETITIONER'S BRIEF, p. 2. The court rejects this claim. The record clearly indicates, that although Attorney Crozier experienced a brief period of illness during the trial, he fully considered and addressed the issues relevant to the petitioner's defense. At the habeas hearing, Attorney Crozier CT Page 9610 testified that he and members of his firm engaged in several brainstorming sessions during which the defense of justification was discussed. HABEAS TRANSCRIPT I, p. 40. He explained that ultimately, he decided it would be better for the petitioner if they did not pursue a justification defense because the jury was likely to be offended by such a defense in light of the injuries that the victim had sustained and the manner in which they had allegedly been caused. HABEAS TRANSCRIPT I, pp. 39-40. Attorney Crozier further testified that he felt justification was not a productive defense to pursue because the petitioner had denied engaging in any actions which caused or could have caused the victim's injuries. "PETITIONER'S EXHIBIT 31", pp. 9-10. In light of counsel's several brainstorming sessions, his discussions with the petitioner and ultimate decision not to request the instruction, this court cannot accept the petitioner's claim that counsel's brief illness impaired his professional performance on behalf of the petitioner.
 III.
After hearing the evidence and examining counsels' post-trial briefs, this court finds that the petitioner has failed to sustain his burden of proof on either prong of the test set forth in Strickland v. Washington. He has not proved that his counsel's performance was deficient. Further, he has not proved that he was prejudiced by his attorney's representation of him.
For all of the aforementioned reasons, Joseph Torrice's petition for habeas corpus is dismissed.
By the Court,
Zarella, J.