# STATE OF CONNECTICUT *v.* JEFFREY PETERS
## (13599)
## (14240)

Dupont, C. J., and Lavery and Heiman, Js.

Argued November 27, 1995—decision released April 2, 1996

*Susan M. Hankins*, assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Joseph Valdes*, deputy assistant state's attorney, for the appellee (state).

HEIMAN, J. In this consolidated appeal, the defendant appeals in the first case from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of General Statutes § 53-21[1] and assault in the third degree in violation of General Statutes § 53a-61.[2] The defendant appeals in the second case from the judgment of conviction of a violation of probation, rendered by the court by reason of his convictions in the first case.[3]

The defendant claims that his conviction in the first case is fatally flawed because the trial court improperly (1) instructed the jury on self-defense in four ways, including (a) giving an incorrect definition of "initial aggressor" as the first person to use physical force, (b) making an incorrect statement that a person who acted from anger, malice or revenge could not claim self-defense, (c) failing to charge on the subjective-objective standard by replacing that standard with a totally objec-

---

[1] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[2] General Statutes § 53a-61 (a) provides: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon."

[3] In the first case, the defendant was also charged with threatening in violation of General Statutes § 53a-62 but was found not guilty of that charge.

tive standard, (d) limiting the defendant's claim of justification to the charge of assault, (2) omitted judicial gloss from its instructions regarding the elements of the crime of risk of injury, thereby depriving the defendant of his right to due process, (3) permitted the defendant's conviction of risk of injury to stand where the evidence was insufficient to support a conviction, and (4) violated the defendant's right not to be placed in double jeopardy by sentencing him for both risk of injury and assault in the third degree. The defendant also asserts that in the second case, the judgment of conviction of violation of probation should be reversed because the factual predicates for the violation of probation were the allegedly improper convictions of risk of injury and assault in the third degree. We affirm the judgments of the trial court.

The jury could reasonably have found the following facts. On December 7, 1991, the victim was fourteen years of age and resided on Norfolk Street in Hartford with his mother. The victim's mother had been in a long-term relationship with the defendant and, at the time of trial, they had been married for approximately two weeks.

On December 7, 1991, at the house on Norfolk Street, the defendant and the victim started to argue with each other. The defendant and the victim were both in the living room, and the defendant, using his body, began shoving the victim, forcing him into the kitchen and against a kitchen wall. While the defendant continued shoving, the victim punched the defendant, then picked up a knife, dropped it, and ran from the house.

The defendant followed the victim from the house, saying that he was going to "get" the victim, and he finally caught the victim in the yard. The defendant shoved the victim up against the door of a car and punched him in the left eye. The victim fell to the ground

and, at the same time, the defendant grabbed the victim's sweater, ripped it, caused it to wrap around the victim's neck, pulled on it, and choked the victim. The victim then managed to ease out of the sweater.

While the victim was lying on the ground, his mother threw herself on top of him so that the defendant would not hit him again. The victim got up and ran to his grandmother's house on Garden Street, about one mile away from the assault. When the victim arrived at his grandmother's house, he was crying. The victim's left eye was black and blue, swollen and almost completely closed due to the defendant's punch. The victim's grandmother called the police.

I

The defendant first claims that the trial court improperly instructed the jury in four distinct areas of the law relating to self-defense. The defendant asserts that the improper instructions deprived him of his constitutionally guaranteed rights to present a defense, to due process, and to a fair trial. We are unpersuaded.

We note at the outset that the defendant failed to file a request to charge concerning the law of self-defense.[4] The defendant also failed to take an exception to the trial court's self-defense charge.[5] Thus, the defendant has not properly preserved his claims regarding the charge. The defendant seeks review of this claim pursuant to *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant also seeks review under the plain error doctrine.[6] We afford *Golding* review[7] to these claims because the right to establish

---

[4] See Practice Book § 852.

[5] See Practice Book § 853.

[6] See Practice Book § 4185.

[7] "The first two conditions [of *Golding*] are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review

a defense is constitutional in nature. *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967).

We preface our analysis of the defendant's individual claims by once again stating, albeit briefly, the fundamental precepts that govern our review of these claims. "An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. . . . In either instance, [t]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995).

A

We first address the defendant's challenge to that portion of the trial court's charge regarding the concept of "initial aggressor." The defendant asserts that the trial court improperly defined that term. Having examined the trial court's instruction concerning the concept of the initial aggressor in the context of the charge as a whole, we conclude that it was not reasonably possi-

of the claim itself." *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994).

ble that the jury was misled as a result of that instruction.

In the course of discussing the issue of self-defense, the trial court stated: "Finally, a person is not justified in using physical force if intending to cause physical injury to another person he provokes the use of physical force by that other person or if he is the initial aggressor. That is the first one to use physical force." An instruction that the first person to use physical force is the initial aggressor, viewed in isolation, is an incorrect statement of our law. *State* v. *Jimenez*, 228 Conn. 335, 340, 636 A.2d 782 (1994). "[A] person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or *imminent* use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose . . . ." (Emphasis added.) General Statutes § 53a-19 (a). The fact that the trial court made an isolated, improper statement, however, does not end our inquiry. We must next determine whether it is reasonably possible that the incorrect statement misled the jury when viewed in light of the charge as a whole. *State* v. *Grullon*, 212 Conn. 195, 204, 562 A.2d 481 (1989). In short, we are obligated to examine and consider " 'the substance of the charge rather than the form of what was said . . . .' " (Citations omitted.) *State* v. *McMurray*, 217 Conn. 243, 253–54, 585 A.2d 677 (1991).

The trial court carefully reviewed with the jury the substance of the concept of self-defense. Before its misstatement regarding the concept of initial aggressor, the trial court instructed the jury that "[a] person is justified in using reasonable physical force upon another person to defend himself from what he reasonably believes to be the *imminent* use of physical force." (Emphasis added.) The trial court further instructed: "Now to state it in a somewhat different fashion, a

person is justified in the use of reasonable physical force upon another when he . . . reasonably believes that such force is necessary to protect himself from the use or the *impending* use of physical force by another." (Emphasis added.) The trial court additionally stated: "You must find the defendant not guilty on grounds of justification unless the state has proved beyond a reasonable doubt . . . that the defendant did not believe that he was in *imminent* danger of injury and that the use of force was not necessary to protect himself." (Emphasis added.) Moreover, the trial court instructed that "the danger or apparent danger claimed by the defendant is to be determined from his standpoint at the time of the attack and under all the existing circumstances. The act leading to the defendant's claim of self-defense means the act by another person need not be an actual threat or assault. The test is not what the other person . . . actually intended but the test is what [the other person's] act, if any, caused the defendant to reasonably believe was his intentions. In other words, the danger need not have been actual if the defendant reasonably believed that the danger was actual, real, imminent or unavoidable." Furthermore, the trial court instructed: "Under such circumstances it is often possible to mistake an actual threat when none in fact existed." The trial court also gave detailed instructions concerning the meaning of the term "reasonable" and repeatedly told the jury that the burden rested on the state to disprove beyond a reasonable doubt that the defendant acted in self-defense.

Our examination of the charge as a whole reveals that the trial court's instructions neutralized any possible prejudice that may have resulted from the court's isolated misstatement. The trial court definitively explained that the defendant justifiably could have been the first person to use physical force, as long as he was acting to defend himself from what he perceived to be

the imminent use of physical force by the victim. "It was made abundantly clear that the defendant could be the first to use force without being the initial aggressor." *State* v. *DeMartin*, 20 Conn. App. 430, 436, 568 A.2d 1034, cert. denied, 214 Conn. 803, 573 A.2d 316 (1990). Thus, we conclude that it is not reasonably possible that the jury was misled.

B

The defendant next asserts that the trial court improperly instructed the jury by stating, inter alia, that "a person claiming this right [of self-defense] must act honestly and conscientiously and not from anger or malice or revenge." The defendant posits that this portion of the self-defense charge created an unauthorized limitation on the defense of justification, thus easing the burden cast on the state to disprove that defense beyond a reasonable doubt. We are persuaded that this instruction, when viewed in the context of the charge as a whole, presented the case to the jury so that it was not reasonably possible that the jury was misled.

The trial court instructed the jury as follows: "The law of self-defense does not imply the right of attack in the first instance or in mere retaliation. By definition, self-defense means the use of defensive force. Therefore, a person claiming this right must act honestly and conscientiously and not from anger or malice or revenge. He must not provoke or intentionally bring the attack upon himself in order to provide an excuse to use force against another person. A person is not justified in using physical force when with the intent to cause physical injury to another he provokes the use of physical force by such person."

The defendant asserts that this claim is governed by the decision of our Supreme Court in *State* v. *Corchado*, 188 Conn. 653, 656–69, 453 A.2d 427 (1982). He posits that the trial court's language in the present case is

substantially similar to the trial court's language that mandated reversal in *Corchado*. We conclude that the defendant's claim is unsupported and that his reliance on *Corchado* is misplaced.

In *State* v. *Corchado*, supra, 188 Conn. 664, the trial court employed the following language in its discussion of the law concerning self-defense: " '[H]omicide is classified as justifiable when the defendant is *without fault* and is attacked and reasonably believing that he is in danger of death or great bodily harm kills his attacker to defend himself.' " (Emphasis added.) The trial court further instructed the jury that " '[a]ny direct personal assault made in anger, by the accused, upon the deceased, of course, renders the accused the aggressor, and when he kills the person assailed, precludes him from pleading self-defense.' " Id., 666. In addition, the court instructed that " '[i]t has been held that self-defense may not be claimed by one who deliberately places himself in a position where he has reason to believe his presence would provoke trouble.' " Id., 666–67. Moreover, the court instructed that " '[i]t is also a concept of our law . . . that *a person is the aggressor when he leaves a quarrel to go to his home to arm himself, and then returns to the scene of the quarrel and kills the other person.*' " (Emphasis added.) Id., 667.

Our Supreme Court, in discussing why it concluded that these instructions were of such a nature as to make it reasonably possible that the jury was misled, reasoned "that the words 'without fault,' coming as they did at the start of the challenged instructions in combination with the other challenged instructions, as they impacted the jury, even in the context of the whole charge, erroneously deprived the defendant of the fair intendment of § 53a-19. The term 'without fault' was neither explained nor defined. The statute does not provide that a person be 'without fault' to come within its reach. It is not difficult to visualize self-defense situa-

tions where, as here, there is some fault on both sides." Id., 664–65. Further, in dealing with the balance of the charge, the Supreme Court said: "Initially, we note that singly, and certainly collectively, these instructions, fairly construed, foreclosed the defendant from his right to have the jury pass upon his claim of self-defense under § 53a-19. This is principally, if not entirely so, because the instructions, in effect, made him the initial aggressor not only because of the slapping incident but also because he returned to the scene after arming himself."[8] Id., 667.

It is clear that the language employed by the trial court in the present case is not similar to the language that mandated reversal in *Corchado*. It was the use of the words "without fault" in *Corchado* that "propounded an absolute for the jury while the statute does not." Id., 665. Moreover, with respect to the balance of the charge in *Corchado*, the Supreme Court held that those instructions "include[d] some 'directed verdict' language, i.e., 'a person is the aggressor when he leaves a quarrel to go to his home to arm himself, and then returns to the scene of the quarrel and kills the other person,' " which effectively removed from the jury its right to determine the defendant's intent and what he reasonably believed. Id., 668. Thus, the language in the present case is clearly distinguishable in content and effect from that in *Corchado*.

We further recognize that § 53a-19 (a) provides in pertinent part that "a person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force . . . ." Thus, the defendant must entertain an honest belief that the other

---

[8] The defendant in *Corchado* had returned to the scene of the incident after arming himself, and he subsequently slapped the victim's face in response to a "mean smile." *State* v. *Corchado*, supra, 188 Conn. 655–56.

person is using or is about to use physical force, and the defendant's decision to use defensive force must be based on this sincere belief as opposed to anger, malice or revenge. See *State* v. *Bailey*, 79 Conn. 589, 598–99 n.c, 65 A. 951 (1907) (approving charge under common law of self-defense that stated in part: "The reasonable belief under which the accused acted must have been an honest belief . . . . [I]f you find the accused acted in malice, or if he had no such honest belief, or there were no reasonable grounds to hold such a belief, his defense of self-defense fails."); see also *State* v. *Prioleau*, supra, 235 Conn. 281–83 n.9 (court approved, on unrelated grounds, self-defense charge stating that defendant must not act out of "anger, malice or revenge"). We conclude that it is not reasonably possible that the jury was misled by the trial court's reference to the fact that the defendant must act honestly and conscientiously and not from anger, malice or revenge, having examined that reference in the context of the charge as a whole.

C

The defendant next contends that the trial court improperly instructed the jury by substituting a purely objective standard for the required subjective-objective standard. A review of the charge demonstrates that this claim is without foundation. Although we agree with the defendant that an instruction employing only a simple objective standard would not withstand constitutional challenge in isolation, we are satisfied that based on the facts of the case, the issues presented, and the charge as a whole, there is no reasonable possibility that the trial court's instruction misled the jury to an improper verdict. *State* v. *Scarpiello*, 40 Conn. App. 189, 205, 670 A.2d 856 (1996).

In support of his position, the defendant points to several places in the charge where the trial court stated

in varying terms that reasonable force is the force that an average person of ordinary intelligence and under like circumstances would judge to be necessary to prevent injury, and no more. We recognize that the trial court made such statements, but that does not end our inquiry. "It is well settled that a jury's evaluation of a claim of self-defense has both subjective and objective elements. *State* v. *Hall*, 213 Conn. 579, 586 n.7, 569 A.2d 534 (1990); *State* v. *Corchado*, supra, 188 Conn. 663; *State* v. *Williams*, 25 Conn. App. 456, 464, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991). In evaluating a claim of self-defense, a trier of fact must first examine the danger that a defendant claims he faced. It is clear that here [t]he statute focuses on the [defendant] claiming self-defense. It focuses on what *he* reasonably believes under the circumstances . . . . *State* v. *Corchado*, [supra, 663]. *State* v. *Williams*, supra, 464. The jury must view the situation from the perspective of the defendant. . . . [T]he defendant's belief [however] ultimately must be found to be reasonable. *State* v. *Hall*, supra, 586 n.7, quoting *State* v. *DeJesus*, 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Webb*, 37 Conn. App. 722, 726–27, 657 A.2d 711, cert. denied, 234 Conn. 915, 660 A.2d 359 (1995).

We have reviewed the charge in its entirety and conclude that the trial court made clear to the jury that its self-defense analysis required the application of a subjective-objective standard. In its initial discussion of the law of self-defense, the trial court instructed the jury that "[a] person is justified in using reasonable physical force upon another person to defend himself from what *he* reasonably believes to be the imminent use of physical force. And he may use such degree of force which *he* reasonably believes to be necessary for that purpose . . . ." (Emphasis added.) The trial court also explained that "the danger or apparent danger

claimed by the defendant is to be determined *from his standpoint* at the time of the attack and under all the existing circumstances." (Emphasis added.)

After the completion of the charge, but before jury deliberations commenced, the trial court recalled the jury and added to its instructions on the issue of self-defense. The trial court instructed the jury that it "must find the defendant not guilty on grounds of justification, in other words on grounds of self-defense, unless the state has proved beyond a reasonable doubt any one of the following elements. One is that the defendant did not believe he was in imminent danger of injury and the force used was necessary to protect himself. *Now this is a subjective kind of test. In other words, what did the defendant perceive?* . . . And as I told you and I want to make sure you understand . . . *you're looking at this from the defendant's standpoint,* at the time of the incident, under all the circumstances as they existed." (Emphasis added.)

The trial court also added that "the action leading to the defendant's claim of self-defense need not be an actual threat or assault. The test is not what [the victim] actually intended but what his actions and/or words, gestures caused the defendant to believe. In other words, it's a *subjective* test on [his] part. In judging a danger to himself, the defendant is not required to act with infallible judgment. Usually [you] do not have time to act other than instantly, you don't have time to deliberate and investigate. Under such circumstances, it is possible often to mistake an actual threat when none in fact existed. So that's the *subjective* part of that test, all right? If the state disproves the defendant *subjectively* believed he was in imminent danger and the use of force was necessary, then they have met their burden on that." (Emphasis added.)

The trial court further instructed as follows. "The other half of that, or the second part of that, is the

*objective* test. In other words, the state could disprove that the defendant's perception, even though he had it, he subjectively possessed it at the time, the state could disprove that it was reasonable. And I've defined reasonable for you on a number of occasions. And an objective or reasonable person test measures the conduct or the perception of one against a sort of general standard. In other words, it's not what you believe at the time or perceive at the time, it's what a reasonable person, a person of average, ordinary intelligence and like circumstances would judge to be the situation, and would judge that it was necessary to use self-defense to prevent injury. *All right, so on that issue there's both the subjective test what the defendant perceived under all the circumstances and an objective test, was it reasonable.* The state [can] disprove one or the other." (Emphasis added.)

Finally, the trial court instructed: *"Then there is the second matter which has both subjective and objective tests.* They're essentially the same tests, and that [is] the force, if you believe force was used by the defendant, was that reasonable? And again, there's a *subjective* test and an *objective* test. The subjective test is essentially the same as I just told you, exactly the same, what was the defendant's perception under all of the circumstances as he reasonably, not as he reasonably, but as he believed them to be in an act involving instantaneous judgment without time to deliberate and investigate, that's the subjective test. Then on that issue of whether or not reasonable force was used by the defendant we also have an objective test. . . . In other words, was the reasonable force the type of force used merely to prevent injury and no more, which [an] . . . average person of ordinary intelligence and like circumstances would use? . . . So there are two parts to each test; the state can disprove one or the other beyond

a reasonable doubt. And if it does, then you would not find self-defense in this case." (Emphasis added.)

We conclude that the trial court adequately instructed the jury as to both the subjective and objective tests involved in a self-defense analysis, and that the defendant's claim to the contrary is without merit.

D

The defendant next argues that the trial court improperly restricted the jury's consideration of the defendant's claim of self-defense. The defendant posits that the trial court limited the jury's self-defense analysis to the charge of assault in the third degree, thereby forbidding the jury from applying a self-defense analysis to the charge of risk of injury to a child.[9] The defendant claims that the trial court created such a restriction when it stated that self-defense was to be considered as an "added item" or an "additional matter" in conjunction with the crime of assault in the third degree. We are unpersuaded because (1) the trial court, although it did not specifically instruct that self-defense applied to the risk of injury count, sufficiently indicated by its language that self-defense applied to that count, and (2) the guilty verdict on the charge of assault in the third degree constituted a rejection by the jury of the

---

[9] The defendant also claims that the trial court improperly applied its self-defense instructions to the charge of risk of injury. First, we note that this claim contradicts the defendant's assertion that the trial court improperly limited the jury's self-defense analysis to the charge of assault. Second, the defendant has inadequately briefed this claim. In support of this claim, he states only the following: "Because the court's instructions on self-defense, as argued above, were erroneous, they infected the jury's verdict on the risk of injury charge, causing the jury improperly to reject the defendant's claim of self-defense, as it applied directly to the assault count, and by incorporation to the risk of injury count." The defendant has furnished us with no legal analysis of this claim, and has provided no case citations or other authority in support of this claim and, therefore, we decline to review it. *State* v. *Prioleau*, supra, 235 Conn. 294.

defendant's claim of self-defense, thereby making any alleged error harmless beyond a reasonable doubt.

1

The trial court made it clear to the jury that the concept of self-defense applied to both the assault count and the risk of injury count. The trial court began its instructions on the specific crimes charged as follows. "Now the substitute information that you have charges the crimes in a particular order. And although there is some relation . . . intellectually between these crimes charged we're going to go in the order in which the state has brought those charges. I have to give you the elements on the three crimes charged *as well as on the concept of self-defense.* If you would look to the first count of the information, it charges risk of injury to a minor against the defendant. In this particular information, *the means of the risk of injury the state's attorney has [charged is] the word assault, assaulting,* and of course he's charged a specific date and time and a specific wilfulness." (Emphasis added.) The trial court further explained that it would define the distinct charge of third degree assault to the jury in later instructions.

After explaining the state's allegation that the defendant had committed the crime of risk of injury in part by committing an assault, the trial court, on two separate occasions, indicated to the jury that a finding of not guilty with respect to the charge of assault mandated a finding of not guilty with respect to the charge of risk of injury. The trial court stated: "[T]he state's attorney has used the same wording in both charges while there are different elements . . . additional elements in the risk of injury charge. I will instruct you that if you find the defendant not guilty on the assault charge *for whatever reason* you must find him not guilty on the risk of injury charge because the assault makes up an

element of the risk of injury charge." (Emphasis added.) Later, in its summary, the trial court instructed that if "you find that the state has not disproved any one or more of the elements on self-defense then you would find the defendant not guilty of assault in the third degree. And if you find him not guilty of assault in the third degree you would also find him not guilty of risk of injury to a minor." The trial court adequately conveyed to the jury that self-defense applied to both crimes.

" 'When examining a jury charge, we do not engage in a microscopic examination of the charge, dissecting it line by line, nor do we consider the challenged portions of the charge in isolation. *State* v. *Fleming*, 198 Conn. 255, 268, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986). We read the instructions as a whole to determine whether a reasonable possibility that the jury was misled by the charge exists. *State* v. *Castonguay*, 218 Conn. 486, 498, 590 A.2d 901 (1991); *State* v. *Dixon*, 28 Conn. App. 444, 447, 611 A.2d 432 (1992); *State* v. *Fernandez*, 27 Conn. App. 73, 84–87, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992).' *State* v. *Andrews*, 29 Conn. App. 533, 540, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993)." *State* v. *Hansen*, 39 Conn. App. 384, 406, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). Applying that test to the present claim, the charge as a whole was fair, just and adequate, and it sufficiently alerted the jury that the defense of self-defense applied to the risk of injury count. It is therefore not reasonably possible that the jury was misled.

2

The jury was fully instructed as to the law of self-defense, and it subsequently found the defendant guilty of assault in the third degree. As a consequence, the

jury rejected the defendant's claim of self-defense. "[T]he jury's verdict of guilty on the offense of [assault in the third degree] was necessarily a rejection of the defense of self-defense. Since the elements of self-defense as applied to [risk of injury to a child] would have been the same as those applied to [assault in the third degree], the defendant would not have benefited by [a specific] instruction that the defense was applicable to [risk of injury to a child]." *State* v. *Hall*, 213 Conn. 579, 589, 569 A.2d 534 (1990). Thus, any alleged error was harmless beyond a reasonable doubt.[10]

## II

The defendant next claims that the trial court improperly failed to include limiting judicial gloss in its jury instructions concerning the elements of the crime of risk of injury to a child. The defendant asserts that this omission deprived him of his right to due process. The defendant concedes that this claim was not raised in the trial court, but he asserts that the claim is reviewable under the well known rubric of *State* v. *Evans*, supra, 165 Conn. 70, and *State* v. *Golding*, supra, 213 Conn. 239–40.

"The record here is adequate to review the alleged claim and the claim is of constitutional magnitude because the defendant asserts that the trial court failed to instruct the jury on an essential element of the crime charged. See *State* v. *Tweedy*, 219 Conn. 489, 510, 594 A.2d 906 (1991); *State* v. *Williamson*, 206 Conn. 685, 708, 539 A.2d 561 (1988)." *State* v. *Sparks*, 39 Conn. App. 502, 512–13, 664 A.2d 1185 (1995). We conclude, however, that the alleged constitutional violation does

---

[10] Although we conclude that the trial court conveyed to the jury that the concept of self-defense applied to the charge of risk of injury, we note that if the trial court had not done so, it would not have been required to give such an instruction, sua sponte. *State* v. *Torrice*, 20 Conn. App. 75, 83, 564 A.2d 330, cert. denied, 213 Conn. 809, 568 A.2d 794 (1989).

not clearly exist and did not clearly deprive the defendant of a fair trial.

The defendant asserts that the trial court improperly omitted from its instructions that an act likely to impair the health of a child under the second prong of § 53-21[11] must be *deliberate, blatant abuse* in order to be unlawful. The defendant posits that the trial court is obligated to charge the jury in terms that include the use of these specific words. For this proposition, the defendant relies principally on *State* v. *Schriver*, 207 Conn. 456, 466, 542 A.2d 686 (1988) (limiting "type of physical harm prohibited by § 53-21 to instances of deliberate, blatant abuse"). While we recognize that the proscribed conduct is limited to actions that constitute deliberate, blatant abuse; id.; we do not agree that a jury charge is improper if it fails to recite these talismanic words.

A trial court properly explains the second prong of the crime of risk of injury to a child when it makes clear to the jury that to be unlawful the acts of the defendant must be purposeful and intentional acts, not just any acts. See *State* v. *Torrice*, 20 Conn. App. 75, 81, 564 A.2d 330, cert. denied, 213 Conn. 809, 568 A.2d 794 (1989) (crime of risk of injury to child as interpreted by *Schriver* adequately explained where "[t]he trial court told the jury that it was not permitted to find the defendant guilty for committing 'any act,' but must find that he acted wilfully and 'that he either intended the resulting injury to the victim, or he knew that the injury would occur, or that his conduct was of such a character that it demonstrated a reckless disregard of the consequences' ").

Here, the trial court's instructions properly conveyed to the jury that the defendant's actions, in order to be considered unlawful, must have been the type of

[11] See footnote 1.

deliberate, blatant actions discussed in *Schriver*. The trial court charged, in pertinent part, that "[a] person who *wilfully* causes any child under the age of sixteen to be place[d] in such a situation that his health is likely to be injured, is guilty of this offense. The statute in so far as it applies here prohibits certain *behavior likely to physically injure* a minor under the age of sixteen years. The behavior which is prohibited is the creation of a situation *inimical or harmful to the minor's physical welfare.* . . . The first element is that the defendant's conduct was *wilful*. The word wilful means doing a forbidden act *purposefully* in violation of the law. It means that the defendant acted *intentionally* in the sense that his conduct was *voluntary* and not inadvertent and that he *intended the resulting injury* to the victim. Thus, wilful misconduct is *intentional misconduct,* which is *conduct done purposefully and with knowledge of [its] likely consequences.* . . . The second element is that the defendant *created a situation that was likely to be harmful to the victim's health.* Health means the state of being hale, sound or whole in body, mind or well being. The focus is on whether the situation was such that *harm to [the victim's] health [was] likely to occur.* The third element is that the victim was at the time of the incident less than sixteen years of age, that is, that he had not reached his sixteenth birthday." (Emphasis added.) The trial court continued by summarizing the elements of the crime, explaining again that in order to convict the defendant, the state must prove that he acted wilfully and that he caused a child to be placed in such a situation that the child's health was likely to be injured.

On the basis of our review of the charge as a whole, we conclude that the trial court's instructions concerning the charge of risk of injury to a child adequately explained to the jury the elements of the crime with

sufficient specificity to meet the demands of *State* v. *Schriver*, supra, 207 Conn. 466.[12]

## III

The defendant next claims that the evidence was insufficient to permit the jury to have found the defendant guilty of the charge of risk of injury to a child. We disagree.

"We begin our analysis by restating the principles that guide and define the scope of our review. When called on to review a challenge to the sufficiency of the evidence to support a conviction, we undertake a two part analysis. . . . First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Cintron*, 39 Conn. App. 110, 118, 665 A.2d 95 (1995).

Having carefully reviewed the evidence, we conclude that it was sufficient to support the defendant's conviction of risk of injury to a child. The evidence established

[12] As a corollary to the defendant's claim, the defendant asserts that because the trial court did not properly instruct the jury pursuant to *Schriver*, it permitted the jury to find the defendant guilty of risk of injury if the defendant's misconduct produced a "very minor injury." Because we conclude that the trial court's instructions properly explained the crime of risk of injury as construed in *Schriver*, the defendant's assertion consequently fails. We note, however, that the defendant ignores the fact that the state was not obligated to prove that the victim had sustained injury of any nature in order to establish criminal liability for risk of injury to a child. The state was only obligated to prove that the egregious conduct of the defendant was "likely to impair the health" of the child. General Statutes § 53-21. "Section 53-21 of the General Statutes does not require a showing that, in fact, the health of the child was impaired but only that the conduct or the acts of the defendant were such that the health of the child was likely to be impaired." *State* v. *Palozie*, 165 Conn. 288, 291–92, 334 A.2d 468 (1973).

that the defendant pushed the victim around the interior of the house and shoved the victim against the kitchen wall. When the victim picked up a knife, immediately dropped it, and ran outside, the defendant pursued the victim. When the defendant caught up with the victim in the yard, the defendant shoved the victim against a car and punched the victim in the eye, causing the eye to turn black and blue and to swell almost closed. The victim fell to the ground. Finally, the evidence discloses that the defendant choked the victim by pulling the victim's sweater with sufficient force to cause the sweater to rip.

The defendant's claim regarding the sufficiency of the evidence is without merit.

IV

The defendant next claims that his right not to be placed in double jeopardy, guaranteed by the fifth amendment to the United States constitution[13] and article first, § 8, of the Connecticut constitution,[14] was violated when he was convicted and sentenced for committing both assault in the third degree and risk of injury to a child. We do not agree.

The defendant concedes that this is yet another claim that was not properly raised or preserved in the trial court, and, accordingly, he seeks review of this claim under *State* v. *Evans*, supra, 165 Conn. 70, and *State* v. *Golding*, supra, 213 Conn. 239–40. While we agree that he is entitled to review of this unpreserved claim, we do not agree that the defendant's right to be free of

---

[13] The fifth amendment to the United States constitution provides in pertinent part: "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ."

[14] The defendant has failed to provide us with a separate analysis of his claim under the Connecticut constitution, and, therefore, we choose not to review this claim under the Connecticut constitution. *State* v. *Scarpiello*, supra, 40 Conn. App. 198 n.4. This does not mean, however, that we are not able to afford review of such a claim if we decide to do so. Id.

double jeopardy was violated, and, thus, the defendant fails to satisfy the third prong of *Golding*.

The defendant posits that the charges against him arose from the same transaction and that they allege the same act. The defendant asserts that he was subjected to multiple punishments for the same offense because the charge of assault in the third degree was included in the charge of risk of injury to a child. The defendant bases this argument on the fact that the language employed in the long form information alleged that the defendant committed risk of injury to a child by committing an assault. The state concedes that both of the charged offenses arose out of the same act or transaction. The state asserts, however, that the defendant cannot prevail on his double jeopardy claim because he has failed to demonstrate that the two convictions are convictions for the same offense. We agree with the state.

The double jeopardy clause provides three protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). Here, the defendant limits his claim to the third protection of the double jeopardy clause and asserts that he is being twice punished for the same offense.

"The test for determining whether two charged offenses constitute the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof

of a fact which the other does not. Id., 304; *State* v. *John*, [210 Conn. 652, 695, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989)]. In conducting this inquiry, we look only to the relevant statutes, the information, and the bill of particulars, not to the evidence presented at trial. . . . *State* v. *Greco*, [216 Conn. 282, 291, 579 A.2d 84 (1990)]; *State* v. *John*, supra [695]. The issue, though essentially constitutional, becomes one of statutory construction. *State* v. *Rawls*, 198 Conn. 111, 120, 502 A.2d 374 (1985); *State* v. *Madera*, 198 Conn. 92, 109, 503 A.2d 136 (1985)." (Internal quotation marks omitted.) *State* v. *Woodson*, 227 Conn. 1, 8–9, 629 A.2d 386 (1993).

We have held that "[e]ven if the assault charge and the risk of injury charge arose out of the same act . . . the elements of the two charges are distinct and dissimilar and are not the same offense for double jeopardy purposes. *State* v. *Trujillo*, [12 Conn. App. 320, 336, 531 A.2d 142, cert. denied, 205 Conn. 812, 532 A.2d 588 (1987)]; *State* v. *Martin*, 189 Conn. 1, 7 n.2, 454 A.2d 256, cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983)." *State* v. *Davis*, 13 Conn. App. 667, 671–72, 539 A.2d 150 (1988); see also *State* v. *Torrice*, supra, 20 Conn. App. 95–96 n.13 (similar double jeopardy claim rejected on same grounds and because "defendant [took] far too narrow a view of the language used" in information); *State* v. *DeMayo*, 18 Conn. App. 297, 300–301, 557 A.2d 571, cert. denied, 212 Conn. 807, 563 A.2d 1355 (1989) (defendant's double jeopardy claim rejected where state alleged same conduct constituted sexual assault and risk of injury to child). The crime of assault in the third degree; General Statutes § 53a-61; does not require that the victim be a child under the age of sixteen, while the crime of risk of injury to a child does have such a requirement. General Statutes § 53-21. Moreover, unlike assault in the third degree, the charge of risk of injury to a child does not

require proof of an actual injury, but only that the actions of the defendant exposed the victim to a situation that potentially could impair his health. *State* v. *Sullivan*, 11 Conn. App. 80, 98–99, 525 A.2d 1353 (1987). Further, in order to convict the defendant of the charge of assault in the third degree, the state was obligated to prove that the defendant had a specific intent to cause physical injury to the victim. General Statutes § 53a-61. The charge of risk of injury does not require such a specific intent. *State* v. *McClary*, 207 Conn. 233, 240, 541 A.2d 96 (1988); *State* v. *Torrice*, supra, 95.

The defendant's double jeopardy claim is therefore without merit.

V

Finally, the defendant claims that if we reverse his convictions of assault in the third degree and risk of injury to a child, we should accordingly reverse his conviction of violation of probation, because that conviction is based on the earlier convictions. Having concluded that the defendant cannot prevail in his attack on the underlying convictions, we do not address this final claim.

The judgments are affirmed.

In this opinion the other judges concurred.